**P. A. B. PRODUITS ET APPAREILS de BEAUTE, Appellant,**

v.

**SATININE SOCIETA in NOME COLLETTIVO di S.A. e. M. USELLINI, Appellee.**

**Appeal No. 77–589.**

United States Court of Customs and Patent Appeals.

Feb. 16, 1978.

329

Robert J. Patch, Washington, D. C. (Young & Thompson, Arlington, Va.), attorneys of record, for appellant.

G. Franklin Rothwell, Washington, D. C. (Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C.), attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

LANE, Judge.

Registrant appeals from a decision of the Trademark Trial and Appeal Board (board)[1] granting appellee's petition to cancel its registered mark. We reverse.

### Background

On December 30, 1971, petitioner, an Italian-based firm, filed Serial No. 411,529 with the Patent and Trademark Office (PTO) seeking registration of the mark represented below on the Principal Register for powder, face powder, liquid eye liner, plastic eye liner, eye pencils, mascara creams, mascara tablets, eye liner brushes, body deodorants, rouge, skin moisturizers, liquid makeup base, filled powder compact, and undermake-up moisturizer:

Petitioner's application was examined and registration was refused by the PTO because the mark, as applied to the goods of petitioner, so resembles registrant's mark represented below as to be likely to cause confusion, or to cause mistake, or to deceive:[2]

Registration No. 894,765, registered July 14, 1970, Section 8 affidavit accepted.

Registrant's mark is for depilatory wax, depilatory jelly, waxes for topical application, milk lotions, astringents, cosmetic facial masks, cosmetic cleansing creams and jellies and lotions, skin creams, massage creams, cosmetic oils, lipsticks, eye shadow, fluid makeup, mascara, rouge, lip pencils, eyebrow pencils, liquid eye liner, and face powder.

On June 26, 1973, petitioner filed a petition to cancel the cited Registration No. 894,765,[3] and, meanwhile, the PTO suspended action on its ex parte application for registration. It is the board decision in the cancellation proceeding which is now before us on appeal. Petitioner asserted the following grounds in its Petition for Cancellation:

1. 194 USPQ 209 (1977).

2. Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

3. Section 14 of the Lanham Act, 15 U.S.C. § 1064.

1. Satinine has exported from Italy to the United States cosmetic products bearing the trademark PAB as shown in the drawings of Satinine's trademark application Serial No. 411,529, and Satinine desires to further export substantial amounts of their cosmetic products under their trademark PAB to the United States, Satinine having resources and capability of so doing based on production and sale of such cosmetics in Italy and Europe.

2. Registrant has, upon information and belief, abandoned the mark sought to be cancelled herein by discontinuing the use thereof on the products specified in the registration with intent not to resume. This use has been discontinued for two consecutive years immediately prior hereto. In fact, on information and belief, the products of the registration were never used in the United States and the registration was obtained based on a foreign registration.

3. Satinine will be damaged by the continued existence of a registration of an abandoned mark substantially similar to Satinine's mark which has been used and which applicant desires to continue using for substantially the same goods, as the existence of such registration can prevent Satinine from importing the products (if registered at Customs), and prevent Satinine from selling the goods under a mark which is confusingly similar as applied to the respective products, and can prevent Satinine from obtaining its own registration as it is attempting to do in application Serial No. 411,529.

Unquestionably, simultaneous marketing by the parties of their respective cosmetic goods under their respective PAB marks in the same geographic area would be likely to cause confusion in the marketplace as to source. The issue in this appeal is whether petitioner has established that registrant abandoned its mark. On this issue the board found in petitioner's favor and grant-

ed the petition to cancel Registration No. 894,765.

### The Board

The board noted that the registration here sought to be cancelled was based on ownership of a foreign registration [4] as provided for in Section 44(e) of the Lanham Act, 15 U.S.C. § 1126(e). Section 44(f) of the Act, 15 U.S.C. § 1126(f), provides that a registration so obtained "shall be independent of the registration in the country of origin and the duration, validity, or transfer in the United States of such registration shall be governed by the provisions of this Act." Thus, said the board, while a foreign applicant has a procedural advantage in obtaining a registration in this country, there being no requirement to allege use "in commerce," [5] the maintenance of such a registration is placed on equal footing with a domestic registration which issues on the basis of such use. Having obtained a registration, the foreign registrant is subject to our national law; it is subject to the same treatment and conditions which prevail in connection with domestic registrations based on use in the United States, including the possibility of cancellation on the ground of abandonment. See *Sinclair v. Deb Chemical Proprietaries Ltd.*, 137 USPQ 161 (TTAB 1963) and cases cited therein.

Section 45 of the Act, 15 U.S.C. § 1127, states in pertinent part that "A mark shall be deemed to be 'abandoned' * * * [w]hen its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. *Nonuse for two consecutive years shall be prima facie abandonment*." [Emphasis added.] The board deduced that petitioner had established a prima facie case of abandonment by showing nonuse of the mark of Registration No. 894,765 for two consecutive years; and, further, that registrant had failed to overcome this prima facie case.

---

**4.** French Registration No. 727,554 dated October 3, 1967.

**5.** Section 45 of the Act, 15 U.S.C. § 1127, defines "commerce" as all commerce which may lawfully be regulated by Congress.

The nub of the proceeding, said the board, lies in the answer by registrant to an interrogatory posed by petitioner regarding registrant's use of its mark. Petitioner's interrogatory stated in pertinent part:

Has registrant ever used the mark of registration No. 894,765 on the goods specified in such registration, in commerce lawfully regulatable by Congress under the Constitution of the United States?

a) If so, what were the dates of such use?

b) If so, in what type of commerce was such use?

c) If so, identify all documents mentioning such use.

d) If so, what has been the volume of such use by annual dollar sales in the United States?

\* \* \* \* \* \*

g) If not, what, if anything, does registrant rely upon to excuse such nonuse?

\* \* \* \* \* \*

Registrant answered the interrogatory on *June 23, 1975,* as follows:

Yes.

a) The dates were as set forth on the attached copies [July 22, 1971; May 18, 1972; May 28, 1973; and *July 12, 1973*].

b) The commerce was foreign, between France and the United States.

c) Copies of the documents are attached. On the documents, there is marked in red pencil the items to which the registered mark was applied.

d) The dollar volume has been less than $20.00 per year.

\* \* \* \* \* \*

g) Not applicable.

\* \* \* \* \* \*

**6.** 37 CFR 2.120(b) reads:

(b) *Use of admission or answer to interrogatory.* No admission or answer to an interrogatory shall be considered as part of the record in the case unless the party propounding the request for admission or interrogato-

On July 30, 1975, within its testimony period, petitioner filed a notice of reliance on registrant's answer in accordance with 37 CFR 2.120(b).[6]

According to the board, on July 30, 1975, when petitioner's evidence was offered, the record "would suggest" that registrant's last shipment of goods to this country under its mark had occurred on July 12, 1973. This, said the board, was a period of over two years, and nonuse for two years constitutes prima facie abandonment. It was therefore incumbent upon registrant to rebut the inference of abandonment arising from its failure to use the mark during that period, as by setting forth circumstances which could be deemed to constitute excusable nonuse. This registrant had not done. Hence, the board found that the registered mark had been abandoned.

In the final paragraph of its opinion, the board questioned whether registrant's shipments, amounting to less than $20.00 per year, constituted a bona fide effort to exploit its mark commercially. According to the board, the shipments were so minimal as to raise the "specter" that they were contrived for maintenance of registration rather than to establish a commercial market in this country. Registrable rights, said the board, cannot be protected by use of this type, especially where a competitor stands in the wings ready to use the mark commercially.

### The Arguments

Registrant asserts that only what is pleaded can be proven. The Petition for Cancellation, dated June 26, 1973, alleges nonuse "for two consecutive years immediately prior hereto." In fact, the evidence shows use by registrant within that two-year period. Even if petitioner were permitted to prove a two-year period of nonuse extending subsequent to the date of its

ry files, before the close of his testimony period (testimony-in-chief or rebuttal, as appropriate), a copy of the admission and the request therefor and/or a copy of the interrogatory and its answer and also files a notice of reliance thereon.

Petition for Cancellation, however, it would still lose. The last date of use which registrant proves, July 12, 1973, is less than two years prior to the date when respondent answered petitioner's interrogatory, viz., June 23, 1975. Therefore, the most that petitioner's evidence can establish is nonuse from July 12, 1973 to June 23, 1975, which is less than two years. Moreover, the board wrongly disparaged registrant's shipments in commerce and erred in finding that petitioner is a competitor who stands in the wings ready to use the mark commercially, this being unsupported by the record.

Petitioner urges that the two-year period of nonuse extends from the date of last use until the date of the close of testimony. Before the expiration of its testimony period, registrant could have attempted to rebut the inference of abandonment which had been raised, but it did not. Prima facie abandonment was established and the burden shifted to registrant to rebut this prima facie case, but no rebuttal was forthcoming. Moreover, the record clearly supports the board's finding that petitioner is a competitor standing in the wings ready to use the mark commercially.

## OPINION

### *Two-Years Nonuse*

■ Initially, we address the point raised by registrant that only what is pleaded can be proven; that the Petition for Cancellation, dated June 26, 1973, alleges nonuse "for two consecutive years immediately prior hereto"; that, accordingly, petitioner cannot attempt to prove any two-year period of nonuse extending subsequent to June 26, 1973. While registrant overstates its position, nevertheless the point is well taken on these facts. Normally, if evidence were submitted on an issue without objection by registrant, and both sides presented arguments thereon, then, in accordance with Fed.R.Civ.P. 15(b),[7] the Petition for Cancellation would be treated as amended to conform to the evidence. See *John Winkler's Sons v. American Express Co.*, 175 USPQ 442, 444 n. 6 (TTAB 1972). However, this presumes that registrant would have fair notice of what becomes, in effect, petitioner's new pleading. Otherwise, registrant would be deprived of procedural due process rights. Based on the proceeding below, we do not believe that registrant had fair notice that petitioner was attempting to establish a two-year period of nonuse beginning July 12, 1973. By its answer to petitioner's interrogatory, supra, registrant did establish use within the two-year period preceding June 26, 1973. Not until the board opinion was registrant given notice that the record "would suggest" nonuse for over two years; that such nonuse constitutes prima facie abandonment; that registrant had not rebutted the prima facie case; that, therefore, its registered mark was abandoned. In one fell swoop, registrant was informed that there was a prima facie case of abandonment, and that the prima facie case had become conclusive. We believe that such procedure was unfair, to the prejudice of registrant.

■ Moreover, the burden of establishing nonuse for two consecutive years falls on petitioner in accordance with 37 CFR 2.116(b),[8] and, abandonment being in the

---

7. Fed.R.Civ.P. 15(b) reads:

(b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

8. 37 CFR 2.116(b) reads:

(b) The party having the latest filing date in an interference, the opposer in an opposition proceeding, the petitioner in a cancella-

nature of a forfeiture, must be strictly proved. See 1 J. T. McCarthy, Trademarks and Unfair Competition § 17.3, at 592–93 (1973). On this record registrant's last date of use (July 12, 1973) is less than two years prior to the date when registrant answered petitioner's interrogatory (June 23, 1975). Therefore, the most that petitioner's evidence can establish is nonuse from July 12, 1973 to June 23, 1975, which is less than two years. The record is silent regarding registrant's use or nonuse after June 23, 1975, and there is no basis for us to *infer* nonuse after that date. Contrast *American Lava Corp. v. Multronics, Inc.,* 461 F.2d 836, 59 CCPA 1127, 174 USPQ 107 (1972); *Sterling Brewers, Inc. v. Schenley Industries, Inc.,* 441 F.2d 675, 58 CCPA 1172, 169 USPQ 590 (1971); and *Sinclair v. Deb Chemical Proprietaries, Ltd.,* supra, where nonuse for over two consecutive years was conceded.

The board incorrectly found that, on July 30, 1975, the record "would suggest" nonuse for over two years when, in fact the record established nonuse from July 12, 1973 to June 23, 1975. The board incorrectly found an inference of abandonment; in effect, it said that by not proving use between June 23, 1975 and July 30, 1975, when petitioner's evidence was offered, registrant admitted failure to use the mark during that period. Thus, the board placed on *registrant* the positive duty to prove *use* of the mark when the correct burden is on *petitioner* to prove *nonuse.*

We are mindful that, wherever applicable and appropriate, procedure and practice in inter partes proceedings before the board are governed by the Federal Rules of Civil Procedure in accordance with 37 CFR 2.116(a).[9] We further note Fed.R.Civ.P. 26(e), which reads:

(e) *Supplementation of Responses.* A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

It is apparent that, under Fed.R.Civ.P. 26(e), a party is under no duty to supplement its response to an interrogatory posed during discovery period except as expressly provided. Exceptions to the general rule are provided in large part to ensure that, at the time of trial, there is no prejudice or unfair surprise to a party who has set forth interrogatories, and received answers thereto, during the pre-trial discovery period. That is, the rule ensures that the interrogator is accorded procedural due process. See *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96 (3d Cir. 1977); *Sadowski v. Bombardier Ltd.,* 539 F.2d 615 (7th Cir. 1976); *Havenfield Corp. v. H & R Block, Inc.,* 509 F.2d 1263 (8th Cir. 1975), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). It

---

tion proceeding, and the applicant to register as a concurrent lawful user (or such applicant having the latest filing date), shall be deemed to be in the position of plaintiff, and the other parties to such proceedings shall be deemed to be in the position of defendants.

9. 37 CFR 2.116(a) reads:

(a) Except as otherwise provided, and wherever applicable and appropriate, procedure and practice in inter partes proceedings shall be governed by the Federal Rules of Civil Procedure.

would be inappropriate, in our view, to hold that Fed.R.Civ.P. 26(e)(2)(B) applies to the situation before us, meaning that registrant had a duty to supplement its response to petitioner's interrogatory, for two reasons. First, harsh application of that rule would translate into a forfeiture or loss of trademark rights, even though registrant was not provided fair notice in the proceeding below that petitioner intended to pin its case on a two-year period of nonuse beginning July 12, 1973. If applied in this fashion, the rule would deprive registrant of procedural due process. Second, the circumstances on this record are not, in the terms of the rule, "such that a failure to amend the response is in substance a knowing concealment" [i. e., fraud]. See *Dudley v. South Jersey Metal, Inc.,* supra; *Sadowski v. Bombardier Ltd.,* supra; *Havenfield Corp. v. H & R Block, Inc.,* supra.

Petitioner had the burden of establishing nonuse for two consecutive years. The burden, accordingly, was not on registrant to supplement its response; it was on petitioner to adduce further evidence. If, on June 23, 1975, petitioner believed that it was close to establishing two-years nonuse, it could have deposed registrant after July 12, 1975, but before the close of its testimony period. Instead, petitioner attempted to establish forfeiture by *implication,* and without giving adequate notice to registrant.

■ Proof that a mark has not been used for two or more consecutive years makes out a prima facie case that it has been abandoned, but the inference of abandonment is readily rebutted by a showing that such nonuse was due to special circumstances which excuse the same and not due to any intention to abandon the mark. *American Lava Corp. v. Multronics, Inc.,* 461 F.2d at 839, supra, 59 CCPA at 1131, 174 USPQ at 109. We do not believe that registrant was given a fair chance in the proceeding below to rebut any alleged two-year period of nonuse.

*Token Use*

■ The board frowned upon registrant's shipments from France to the United States, considering them so minimal as to raise the "specter" that they were contrived for maintenance of registration rather than to establish a bona fide commercial market in this country.[10] In this manner the board, sua sponte, raised a new issue, viz., whether registrant's use was only token use which cannot serve to protect rights in its registration. Regarding this issue, it is important to note that the *balance* of equities plays an important role in determining whether registrant's use is sufficient to preserve its registration. See *La Societe Anonyme des Parfums le Galion v. Patou, Inc.,* 495 F.2d 1265, 1274 n. 11, 181 USPQ 545, 550 (2d Cir. 1974). Upon review of the scant record before us, we cannot agree with the board's assertion that "a competitor [petitioner] stands in the wings ready to utilize the mark commercially."

The thrust of petitioner's case below was an allegation of two-years nonuse by registrant. Little evidence was introduced to show the extent of *petitioner's* use. On this point the record merely indicates that petitioner makes specified cosmetic products under its mark PAB and desires to export "substantial amounts" of these products to the United States. We are left to guess the meaning of "substantial amounts." For all the record shows, petitioner is not prepared to export in any greater quantity than has registrant. While petitioner asserts that it has the resources and capability of exporting its cosmetic products to the United States, based on production and sale of such cosmetics in Europe, in fact we have no idea how well-established petitioner's product is in Europe. Accordingly, on this record we disagree with the board that the equities balance in favor of granting the petition to cancel, which, as already men-

10. We note that the realities of commercial life may compel manufacturers to make initial, and continuing, use on a small scale in order to obtain, and maintain, registrations. See Fletcher, *"Time Out," "Snob," "Wipe Out"* and *"Chicken of the Sea": The Death Knell of "Token Use"?* 65 Trademark Rep. 336 (1975). We are not convinced that this practice, per se, would necessarily raise a "specter," requiring forfeiture of the registrations.

tioned, would amount to forfeiture of the registered mark. Contrast *La Societe Anonyme des Parfums le Galion v. Patou, Inc.*, supra, where plaintiff le Galion was a foreign manufacturer who for years had sold its perfume under the trademark SNOB in a number of foreign countries. The sales had been substantial, amounting in one five-year period to almost $2,000,000. Defendant Patou, on the other hand, had obtained a trademark registration for SNOB in the United States, but had made minimal use of the mark thereafter. Balancing the equities, the court took a dim view of Patou's minimal usage, since, by obtaining and maintaining its registration, Patou had succeeded in barring le Galion from marketing its well-established product in this country. On the contrary, the facts before us do not demonstrate the same kind of anti-competitive effect, since registrant's conduct is not barring petitioner from marketing a well-established product in this country.

The decision of the board is, accordingly, *reversed.*

*REVERSED.*

MILLER, Judge, concurring in part and dissenting in part.

Although agreeing with the result reached by the majority opinion on the two-year nonuse issue, I cannot agree that Fed. R.Civ.P. 15(b) should not apply. If registrant really considered that it did not have fair notice that petitioner was attempting to establish a two-year period of nonuse beginning July 12, 1973, it should have moved for reconsideration. However, as pointed out by the majority, the burden was on petitioner to show nonuse for two consecutive years and to fill the gap between June 23, 1975, and July 12, 1975, by evidence rather than by *implication.* Under Fed.R.Civ.P. 26(e)(3), petitioner could have requested supplementation of registrant's prior response for this purpose.

The "scant record," as the majority puts it, is not sufficient to support the board's conclusion that registrant's shipments were so minimal that the specter is raised that they were contrived for maintenance of registration rather than to establish a commercial market in this country. However, neither is the record adequate for making new law on "balance of the equities," as the majority proposes to do. The case should be remanded for development of an adequate record, with particular emphasis on appellee-petitioner's burden of showing token use and appellant-registrant's burden of explaining and justifying such use.

BALDWIN, Judge, dissenting.

I respectfully disagree with the majority opinion. The board's decision correctly assesses the legal issues and satisfies the equities in the case.

Appellant-registrant begins and ends his brief by emphasizing the two-year nonuse requirement for statutory abandonment of a registered mark. 15 USC 1064. This requirement, appellant argues, has not been proven by appellee in accordance with the pleadings. However, a review of the record indicates that the evidence does prove a prima facie case of abandonment by nonuse to which there was no rebuttal. Appellant, not having objected below to the admission of the damaging evidence, now raises an objection before us.

The record does support the following facts. On October 10, 1973, three-and-one half months after the complaint was filed, appellee directed an interrogatory to appellant. Part (a) of the interrogatory requested dates on which the appellant's mark was used in lawfully regulatable commerce in the United States. The answer, given by appellant on June 23, 1975, included a crucial piece of information, the most recent date on which appellant used the mark in commerce—July 12, 1973. This fact brings into focus the precarious condition of the mark, that the mark had not been used for a consecutive one year and forty-nine weeks. Having answered the interrogatory, appellant came under a duty imposed by Fed.R.Civ.P. 26(e)(2) (cited in the majority opinion) to update the answer if warranted by additional information he may have received. Appellant's failure to file an

amendment left only one conclusion to be drawn with respect to use of the mark, that the last date of use was July 12, 1973. Believing he could rely on the answer, appellee filed a notice of reliance as required by 37 CFR 2.120(b) to make the answer part of the evidence. The notice was filed on July 30, 1975, within appellee's testimony period and after two years of nonuse had run. At this point in the proceedings, appellee had established a prima facie case of abandonment and the burden shifted to appellant to show intent not to abandon.

Appellant's testimony period closed February 26, 1976, without any rebuttal of the prima facie case. Appellant concluded incorrectly that he could sit back, wait out his testimony period, and start with a clean slate at the appellate level. There he would argue that the evidence does not prove nonuse *prior* to the date the complaint was filed. Rule 15(b), Fed.R.Civ.P., however, provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The complaint clearly set forth the theory of the case that the mark in question was in nonuse for a period of two consecutive years. Evidence on this issue was admitted without objection from appellant. Regardless of the defects which appellant now alleges, the abandonment issue was properly tried. By operation of Rule 15(b), the abandonment issue, unrestricted by the filing date, was tried by implied consent of the parties. Appellant had notice of the issue as tried. Notwithstanding Rule 15(b), however, appellant's tactics are of no avail. His mark was in jeopardy from the date of last use, July 12, 1973, and the pending litigation did not stop the two years from running against it.

An analogous situation is found in *In re Beatrice Foods Co.*, 429 F.2d 466, 57 CCPA 1302, 166 USPQ 431 (1970). In that case, the issue of registrability in a concurrent use proceeding was decided on facts as they existed at the close of the testimony period. Our rule permitting a party to show facts which existed subsequent to the filing of the complaint is based upon the dynamic nature of trade-mark rights. This rule should be applied in the case presently under consideration. That the two years had run against the mark subsequent to the date the complaint was filed is irrelevant.

Appellant's failure to rebut the evidence of abandonment coupled with the fact that appellant's annual sales in the United States were only twenty dollars make this case a sharp contrast to *Miller Brewing Co. v. Oland's Breweries*, 548 F.2d 349, 192 USPQ 266 (Cust. & Pat.App.1976), and *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675, 58 CCPA 1172, 169 USPQ 590 (1971). In both of these cases, the court considered evidence which rebutted prima facie abandonment, and the court found nonabandonment. Significant facts in each case were that the respective marks had been strong prior to the period of nonuse and that the nonuse had been caused by unavoidable economic circumstances.

To conclude, appellant neither preserved his objections below in accordance with the FRCP nor attempted to rebut appellee's prima facie case of abandonment. He now asks us to put on blinders as we review the evidence on record. The equities of the case do not favor a party who has not only circumvented the FRCP, but also failed to present rebuttal evidence to carry his burden in the case. His appeal must fail. For the reasons stated above, I would affirm the board's decision that appellant's mark is abandoned.