THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
June 21, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

‾‾‾‾

Trademark Trial and Appeal Board

‾‾‾‾

*Leonid Nahshin*
*v.*
*Product Source International, LLC*

‾‾‾‾

Cancellation No. 92051140

‾‾‾‾

Christopher R. Shiplett of Randolph Law PLLC for Leonid Nahshin.

Anthony J. DiMarino III of A. J. DiMarino P.C. for Product Source International.

‾‾‾‾

Before Seeherman, Adlin, and Gorowitz, Administrative Trademark Judges.

Opinion by Gorowitz, Administrative Trademark Judge:

Leonid Nahshin (petitioner) has petitioned to cancel a registration owned by Product Source International, LLC (respondent) for the standard character mark NIC OUT for mechanical cigarette filters for removing nicotine.[1]  In his

---

[1] Reg. No. 3350041 issued for NIC OUT on December 4, 2007, from an application filed March 21, 2006.  On January 8, 2013, respondent filed a combined Declaration of Use and Incontestability under Sections 8 & 15, in which it alleged that "no final decision adverse to owner's claim of ownership of such mark for those goods or services exists, or to the owner's right to register the same or to keep the same on the register; and <u>no proceeding involving said rights pending and not disposed of in either the U.S. Patent and Trademark Office or the courts exist.</u>" (emphasis added).  The

amended petition filed on February 11, 2010, petitioner alleges prior use of the mark NIC-OUT for cigarette filter holders to reduce tar and nicotine and that use of respondent's mark would be likely to cause confusion with petitioner's mark. Respondent filed an answer to the amended petition in which it denied all of the salient allegations. Respondent also asserted seven affirmative defenses, as discussed infra, which include lack of standing.

Although the proceeding was brought on the ground of priority/likelihood of confusion, the actual issue in this matter is ownership of the mark NIC-OUT/NIC OUT[2] in the United States, as the cigarette filters that respondent sells under the mark NIC OUT are the same filters that petitioner arranged to have manufactured under the mark NIC-OUT. In fact, petitioner alleges in the amended petition for cancellation that petitioner is the owner of the mark NIC-OUT. Amended Petition, ¶ 1. During testimony, petitioner introduced evidence for the purpose of supporting this claim, and in his brief, he argued that respondent is not the owner of the NIC OUT mark. Moreover, respondent states in its answer that "Plaintiff-Petitioner does not now and has

---

Section 15 Declaration was filed after this proceeding was instituted, and therefore the latter statement was inaccurate. The Section 8 Declaration was accepted and the Section 15 Declaration was acknowledged. Acknowledgement of a Section 15 Declaration by the Patent and Trademark Office is a purely ministerial act; there is no examination of the Declaration.

[2] We have endeavored in this opinion to be consistent and reference petitioner's claimed mark as NIC-OUT (with a hyphen) and respondent's mark as NIC OUT (without a hyphen), but it is clear that the presence or absence of a hyphen is insignificant to our ultimate decision. Further, while the registration at issue is for the mark NIC OUT, respondent submitted evidence of use of the mark NIC-OUT (with a hyphen) to support its Section 8 Declaration and said evidence was accepted.

not ever owned the mark NIC-OUT," Answer ¶ 1, and during testimony, respondent introduced evidence for the purpose of supporting this position. In its brief, respondent requested that we not consider ownership to be a ground, characterizing it as a "new claim of lack of ownership of trademark registration." Respondent's Brief, p. 2. Respondent's argument to the contrary notwithstanding, it is clear not only that respondent had fair notice of this issue, but also actively defended against it on the merits. In other words, the issue was tried and was argued by both parties in their briefs. *See P.A.B. Produits et Appareils de Beaute v. Satinine Societa In Nome Collettivo di S.A. e.M. Usellini,* 570 F.2d 328, 196 USPQ 801, 804 (CCPA 1978) ("Normally, if evidence were submitted on an issue without objection by registrant, and both sides presented arguments thereon, then, in accordance with Fed. R. Civ. P. 15(b), the Petition for Cancellation would be treated as amended to conform to the evidence."); *see also Colony Foods, Inc. v. Sagemark, Ltd.,* 735 F.2d 1336, 222 USPQ 185, 187 (Fed. Cir. 1984); *Kasco Corp. v. Southern Saw Service Inc.,* 27 USPQ2d 1501, 1504 (TTAB 1993), and cases cited therein.

Accordingly, we treat the pleadings as amended pursuant to Fed. R. Civ. P. 15(b) to include respondent's lack of ownership as a ground.

**Evidentiary Issues.**

In its brief, respondent objected to portions of the testimony of petitioner and Alexander Slobidker in their testimonial depositions on written questions, and to the exhibits to the depositions.

To determine whether these objections were timely or whether they have been waived, we look to Trademark Rule 2.124(d) (1), 37 C.F.R. § 2.124(d) (1), which establishes the procedure for propounding questions and objections in a deposition on written questions. The party taking the deposition serves its notice of taking testimony, accompanied by its written questions, on the adverse party, who then may serve cross-questions and any objections on the party taking the deposition. Redirect questions may then be served, followed by re-cross questions. In response to objections, substitute questions may be served.[3] Thus, in the normal course of a deposition on written questions, there is no opportunity to object to the responses to any questions until after the deposition is completed. TBMP § 703.02(k) ("Unless waived, objections to questions and answers in depositions on written questions, as in oral depositions, generally are considered by the Board at final hearing.").

However, in this case petitioner did not follow the rule. Although he filed and served notices of taking testimony, after the Board suspended proceedings, petitioner did not wait for respondent to serve cross-questions or objections. Instead, petitioner simply had only his questions read to the witnesses, and after receiving the responses, petitioner moved to resume proceedings. Respondent filed an opposition to petitioner's motion to resume, on the ground

---

[3] "A deposition on written questions is a cumbersome, time-consuming procedure," however, "it may be the only means by which a deposition may be taken in a foreign country." TBMP Section 703.02(m). However, a testimonial deposition taken in a foreign country must be taken by deposition upon written questions unless the Board, upon motion for good cause, orders that the deposition be taken by oral examination, or the parties so stipulate. Trademark Rule 2.123(a)(2), 37 C.F.R. § 2.123(a)(2). Petitioner's witnesses were located in Israel and Canada, which we assume is the reason that their depositions were taken on written questions.

that petitioner did not provide respondent with copies of the questions prior to the deposition, thus denying respondent an opportunity to serve cross-questions and object to petitioner's questions. *See* Opposition to Plaintiff's Motion to Resume Proceedings, p. 2. The Board denied petitioner's motion and granted respondent 25 days to serve cross-questions. Thus, respondent had the unique opportunity to review the deponents' answers before drafting its cross-questions. It also had an opportunity to object to the responses and the documents, but failed to do so. It is clear that at least some of respondent's objections, such as lack of authentication of documents, could have been cured by petitioner if respondent had raised them at that point. As a general rule, objections that are curable must be seasonably raised, or they will be deemed waived. See authorities collected in TBMP Section 707.03(a) (3rd. ed., rev 1). Thus, in a deposition upon oral examination, an objection as to the authenticity of a document, to be seasonably raised, would have to be raised during the deposition, at a point where the witness could conceivably cure the problem. Fed. R. Civ. P. 32(d) (3) (A).

Although it would not normally be possible to raise an objection contemporaneously with the taking of testimony or when an exhibit is "introduced," in a deposition on written questions, the procedure employed in this case was akin to an oral deposition. Given the unusual circumstances presented in this case wherein respondent had the answers to the questions prior to its period for serving cross-questions, respondent could and should have objected to the evidence at a time when the defect could have been cured.

5

We find that all of respondent's objections to responses and documents based on asserted lack of authentication are untimely and waived. *Cf. Rocket Trademarks Pty. Ltd. V. Phard S.p.A.*, 98 USPQ2d 1066, 1070-71 (TTAB 2011); *Hornby v. TJX Companies, Inc.*, 87 USPQ2d 1411, 1417 (TTAB 2008). Similarly, the objection to Mr. Nahshin's response to question 13 on the ground that part of the response is "not responsive" is deemed waived because it was not raised during the time allowed for respondent to file cross-questions. If raised, petitioner could have asked additional questions to solicit the information provided. For the same reason, i.e., that the objections could have been overcome, the objections based on a lack of foundation to Mr. Nahshin's response to question 18 and to Mr. Slobidker's answer to question 15 also are deemed waived.

Respondent also objected to the answers to several questions in the depositions on written questions of Leonid Nahshin and Alexander Slobidker.

Respondent has objected to the responses to questions 6, 11, 15, and 18 of the Nahshin deposition on the ground of hearsay. The responses to questions 6 and 11 were based on Mr. Nahshin's personal knowledge or business records, and thus do not constitute hearsay. In response to question 15, Mr. Nahshin did not rely on third-party representations; he merely recited the particulars of his trademark application. Further, the TARR printout containing this information was made of record by notice of reliance. Accordingly, all of the hearsay objections to Mr. Nahshin's testimony are overruled.

Respondent also objected to the response to question 18 on the ground of conjecture and relevance. Mr. Nahshin was asked about the behavior of respondent's president, Mr. Higgins, toward him as an owner of NIC-OUT, and he answered by referring to correspondence. To the extent that the relevance objection goes to the issue of ownership, that issue, as we have said, was tried. As for the conjecture objection, Mr. Nahshin testified based on correspondence he had seen, including that there had been no objection by Mr. Higgins to waybills in which petitioner's company was listed as the exclusive proprietor of the cigarette filters. This objection is also overruled.

Respondent objected to Mr. Slobidker's responses to questions 9, 10, 11, 12, 15, and 17 on the ground of hearsay. Mr. Slobikder testified that: (1) he is a manager of P.Service (Slobidker test. p. 1); (2) he knows about all transactions and correspondence within P.Service because he "operates" the documents and business correspondence (Slobidker test. p. 3); and (3) he is Mr. Nahshin's assistant and as such is informed of all that happens at the company (Slobidker test. p. 4). Mr. Slobidker's responses to the deposition questions were based on the knowledge he acquired through his positions with the company, and are based on personal knowledge, reports and business records. As such, the responses do not constitute hearsay and thus the objections are overruled.

With respect to the response to question 15, respondent also objected on the grounds of conjecture and relevance. We recognize that this testimony is Mr. Slobidker's conclusion based on his review of business records, but in view

of his position, such business conclusions have probative value. As such, the objection on the ground of conjecture is overruled. Further, the response goes directly to the issue of ownership, which is the ultimate issue in this proceeding and thus relevant. Accordingly, the objection on the ground of relevancy is also overruled.

In addition to the objections to the exhibits on the basis of lack of foundation, which we ruled upon above, respondent objected to more than 100 of the 184 pages of documents submitted as exhibits to the testimony of Messrs. Nahshin and Slobidker. Due to the extensive number of objections, we will not deal with them individually. To the extent that we have relied on any of the documents, as set forth in our decision, we overrule the objections.

**The Record.**

The record includes, by operation of the rules, the pleadings and the file of the registration sought to be cancelled. The record also includes the depositions on written questions, with exhibits, of petitioner's witnesses Leonid Nahshin and Alexander Slobidker, and the testimony deposition, with exhibits, of respondent's witness, Eugene Higgins.

In addition, the record includes the following evidence submitted by petitioner pursuant to a notice of reliance:

> a.   Respondent's answers to petitioner's amended first set of interrogatories;
>
> b.   Office action that issued on July 7, 2003 for petitioner's Application Ser. No. 78206651 for the mark NIC-OUT and printout of status of application (abandoned) from USPTO TARR database.

c. Copy of respondent's published U.S. patent application, No. 2009/0050168 A1, submitted during rebuttal testimony.

**Findings of Fact.**

1. Petitioner, Leonid Nahshin, is a citizen of Israel, and has a company located in Beer-Sheva, Israel. (Nahshin testimony responses to questions 1 and 3.)

2. Respondent, Product Source International, LLC, is a New Jersey limited liability company whose principal is Eugene Higgins. (Higgins testimony p. 8 lines 12 – 14 and registration file for Registration No. 3350041.)

3. Petitioner selected Nikolai (Nicolas) Maslov to distribute his product in the United States. (Nahshin testimony response to question 9.)

4. Mr. Maslov promoted and distributed NIC-OUT filters in the United States from 2002 through 2008. (Slobidker testimony response to question 11.)

5. Respondent obtained NIC-OUT filters from Mr. Maslov and began marketing them during the first quarter of 2003. (Higgins testimony p. 8 lines 18–19 and 22-25.)

6. There was an oral agreement between respondent and Nicholas Maslov pursuant to which Mr. Maslov was responsible for "sourcing the product" and making sure there was a supply in the United States for respondent to sell. The terms of the agreement were memorialized on September 19, 2003 in a written agreement between respondent and Mr. Maslov's company, Safety Aid Supplies Inc. (Higgins testimony p. 9 lines 17-21; p. 11 lines 15-17 and exhibit D1 thereto.)

7. The relationship between respondent and Mr. Maslov was terminated during the second quarter of 2007. Respondent started purchasing NIC-OUT filters from petitioner in May 2007. There is no

evidence as to any agreement about the nature of their relationship, or that respondent was acting as a distributer on behalf of petitioner. (Higgins testimony p. 27 lines 2-3; and p. 29 lines 17-31.)

8.   Prior to respondent purchasing NIC-OUT filters from petitioner in 2007, respondent filed on March 21, 2006, application Serial Number 78842281 to register the mark NIC OUT for mechanical cigarette filters for removing nicotine,[4] which issued as the involved registration  (File for Registration No. 3350041.)

9.   There is no evidence that petitioner authorized the filing of the application by respondent.  To the contrary, petitioner filed this action to contest respondent's registration.

10.   There is no evidence that there was any transfer of rights to the mark NIC-OUT from petitioner to respondent.

**Discussion.**

**Standing:**

Respondent alleges that petitioner does not have standing to bring this action because petitioner does not own the mark, has not used it in the United States and as such cannot be damaged.

"Standing ...requires only that the party seeking cancellation believe that it is likely to be damaged by the registration. ... A belief in likely damage can be shown by establishing a direct commercial interest." *Cunningham v. Laser Golf Corp.*, 222 F3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (internal citations omitted).

---

[4] A preliminary amendment was filed on March 27, 2006 amending the mark from NIC-OUT to NIC OUT.  No mention was made of the amendment by the Examining Attorney.  Thus, NIC-OUT and NIC OUT were treated as legally identical.

Petitioner has established, as discussed below, that he is the owner of the mark NIC-OUT; that he has used the mark in the United States through distributors; and, thus, that he is damaged by respondent's involved registration of the virtually identical mark NIC OUT. *See Era Corp. v. Electronic Realty Associates, Inc.*, 211 USPQ 734, 745 (TTAB 1981). As such, petitioner has established that he has standing.

**Ownership:**

Petitioner has shown that he adopted the trademark NIC-OUT at least as early as January 1, 2002, when he entered into an agreement for the production of NIC-OUT cigarette filters. Two months later, petitioner entered into an agreement with Nicholas Maslov to market and sell petitioner's NIC-OUT product in North America. Mr. Maslov promoted and distributed said product in the United States from 2002 through 2008.

There is no evidence that petitioner ever agreed that Mr. Maslov would own the mark in the United States or that petitioner ever assigned his rights in the mark to Mr. Maslov. Accordingly, through the distribution of NIC-OUT filters in the United States by Mr. Maslov, petitioner became the owner of trademark rights in the mark NIC-OUT in the United States; Mr. Maslov did not.

From 2003 until early 2007, respondent purchased petitioner's NIC-OUT product from Mr. Maslov and distributed said product for him. Respondent's president, Eugene Higgins, testified that he did not know where Mr. Maslov

11

acquired the product and was not aware of petitioner or his connection with Mr. Maslov.

Prior to the termination of its agreement with Mr. Maslov, respondent filed to register the mark, based on intent to use the mark in commerce.[5] There is no evidence that respondent was authorized by petitioner to file the application. Respondent *alleges* that Mr. Maslov transferred trademark rights to respondent when they terminated their relationship in 2007. However, there is no *evidence* that there was any transfer of rights in the mark NIC-OUT to respondent.

Mr. Higgins testified that there were three agreements between his company and Mr. Maslov.[6] The first two, which were each entitled "Product Representation Agreement," set forth the structural details of the arrangement between respondent and Mr. Maslov and memorialized a verbal agreement between the parties.

Mr. Higgins testified, as follows, about his first two agreements with Mr. Maslov:

> Q:   When did PSI [respondent] begin selling NIC-OUT?
>
> A:   We began marketing NIC-OUT in 2003, first quarter of 2003.

---

[5] In its statement of use, respondent alleged a date of first use of December 8, 2003 and a date of first use in commerce of January 7, 2004. These dates correspond to dates during which respondent obtained petitioner's NIC-OUT product from Mr. Maslov.

[6] All three agreements have been marked "confidential."

> Q: Where did PSI get the NIC-OUT it was marketing and selling in the first quarter of 2003?
>
> A: I came to an agreement, written agreement with a partner by the name of Nicholas Maslov. Nicholas' job was to source the product and make sure there was a ready supply here in the United States, and my job was to make sales.[7]
>
> ***
>
> Q: Did you have any other agreements with Mr. Maslov before you entered into the first written agreement?
>
> A: We had a verbal agreement in which it was understood that any accounts that I brought on board would be my accounts, and Nick or no one else associated with Nick would sell that product to them.
>
> Q: What product are you referring to?
>
> A: NIC-OUT. That's the only product I worked with with Mr. Maslov. [8]

Because these two agreements were submitted under seal, we will not discuss the details thereof. We can say, however, that there is no mention in either agreement of the trademark NIC-OUT, nor is there a transfer of any trademark rights.[9]

When asked if he reached another (third) written agreement with Mr. Maslov, Mr. Higgins responded:

> "Yes, just the final. As we were leaving, we each had an understanding for the territories and other things.

---

[7] Higgins deposition of November 7, 2011, p. 8, lines 17-25 and p. 9, line 1.

[8] Higgins deposition of November 7, 2011, p. 9, lines 14-24.

[9] Although Mr. Higgins used the term "partner" in his testimony to describe Mr. Maslov, we understand that term to be used, not in its legal sense, but as a colloquial way to refer to the other party to a contract, as neither agreement purports to, or does, establish a legal partnership between his company and Mr. Maslov's company.

13

And one of the agreements indicated that the trademark would be mine, along with the URL nic-out.com."[10]

However, there is no mention of the trademark NIC-OUT in the third agreement either, and the only transfer mentioned is the transfer of the domain name "nic-out.com." More particularly, there is no evidence that Mr. Maslov had any rights that he could have transferred. The written agreement between petitioner and Mr. Maslov's company New Shore Corp. obligates the parties to work together to profit by the sale in North America of goods created by petitioner. There is no mention of the trademark NIC-OUT and no transfer of rights in any trademark.

Respondent's first direct contact with petitioner was in August 2006, when petitioner contacted respondent by facsimile regarding petitioner's NIC-OUT product. Higgins Deposition of November 7, 2001, p. 28, lines 12-14. Respondent responded to the facsimile transmission by requesting a quote for the NIC-OUT product in an email dated Friday August 18, 2006, which was sent to Leon Haxman at nic-out@nic-out.com. Exhibit A to Deposition of Alex Slobidker, p. 000001. Respondent started purchasing NIC-OUT filters from petitioner in May 2007. There is no evidence that petitioner ever transferred any rights in the mark NIC-OUT to respondent.[11] Generally, the mere fact that a U.S. distributor distributes a foreign manufacturer's branded product does

---

[10] Higgins deposition of November 7, 2011, p. 27, lines 6-10.

[11] We also note that petitioner and respondent had no relationship whatsoever prior to May 2007. Thus, at the time respondent filed the underlying application, it could not have obtained any rights in the trademark from petitioner, the mark's owner.

not, without more, give the U.S. distributor an ownership interest in the mark. *See* TMEP § 1201.06(a); *see also Roger & Gallet v. Janmarie, Inc.*, 245 F.2d 505, 114 USPQ 238, 241 (CCPA 1957) (As between a French manufacturer and its U.S. distributor, "the owner, until such time as he chose to part with his United States rights, was unquestionably the French manufacturer, located in France.")

On this record, petitioner has therefore established that he is the owner of the mark. However, before we can grant judgment in his favor, we must consider respondent's asserted affirmative defenses.

Respondent has asserted the affirmative defenses of unclean hands, laches, fraud, mistake, waiver and acquiescence. Respondent does not argue each defense separately but rather asserts that its registration issued on December 4, 2007, and petitioner did not file the petition until June 23, 2009; and that during this 18-month period, "respondent continued to invest and build the mark of its NIC-OUT [sic] product." We regard this assertion as a claim of laches. [12]

"The elements of laches are (1) unreasonable delay in assertion of one's rights against another; and (2) material prejudice to the latter attributable to the delay.... As applied in trademark opposition or cancellation proceedings, th[is] defense must be tied to a party's registration of a mark, *not* to a party's

---

[12] In fact, the affirmative defenses as asserted by respondent did not provide any factual basis for them. Further, respondent's arguments consist solely of conclusory statements.

15

use of the mark." *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes Inc.*, 970 F.2d 732, 23 USPQ2d 1701, 1703 (Fed. Cir. 1992) (internal citation omitted). The approximately 18-month period from the issuance of the registration until the filing of the petition to cancel is a rather limited amount of time. *See Charrette Corp. v. Bowater Communication Papers Inc.*, 13 USPQ2d 2040, 2043 (TTAB 1989) (14 month delay not sufficient to establish laches); *Manpower, Inc. v. Manpower Information Inc.*, 190 USPQ 18, 23 (TTAB 1976) (3-4 year delay not sufficient to establish laches); and *Plymouth Cordage Company v. Solar Nitrogen Chemicals, Inc.*, 152 USPQ 202, 204 (TTAB 1966) (slightly less than 3 year delay not sufficient to establish laches.). It does not constitute unreasonable delay, and accordingly respondent has failed to meet the first element of a laches defense. We therefore do not assess whether respondent has satisfied the prejudice requirement.

Respondent also asserted that "petitioner acknowledged respondent's use of the mark when petitioner manufactured the NIC-OUT product for the mark [sic] in 2007." We regard this as the defense of acquiescence.

"Acquiescence is a type of estoppel that is based on the plaintiff's conduct that expressly or by clear implication consents to, encourages, or furthers the activities of the defendant." *Panda Travel, Inc. v. Resort Option Enterprises, Inc.,* 94 USPQ2d 1789,1797 fn. 21 (TTAB 2009); *See also Christian Broadcasting Network Inc. v. ABS-CBN International,* 84 USPQ2d 1560, 1573 (TTAB 2007).

16

It is true that petitioner provided respondent with product, and allowed respondent to distribute the goods under the mark NIC OUT. However, it is clear that petitioner viewed respondent as a distributor, not as the owner of the mark, and petitioner never consented to, let alone encouraged or furthered, respondent's registration of the involved mark. Accordingly, we find the evidence is insufficient to support the affirmative defense of acquiescence.

The affirmative defenses of unclean hands, fraud and mistake have not been argued and are deemed waived.[13]

We find that petitioner is the owner of the mark NIC-OUT for cigarette filters and that respondent is not entitled to the registration for NIC OUT.

**Decision**: The petition to cancel is granted on the ground that respondent is not the owner of the mark NIC OUT.

---

[13] We note that respondent, in stating that it has asserted its various affirmative defenses, made the statement in its brief, "Respondent pursues these defenses and does not waive these defenses." It is not sufficient to simply make this statement. Respondent was under a burden to take some affirmative action if it actually wished to pursue them. To the extent that they have not been waived, we find that respondent has failed to prove them.