**CERVECERIA CENTROAMERICANA,
S.A., Appellant,**

v.

**CERVECERIA INDIA, INC., Appellee.**

**No. 89–1369.**

United States Court of Appeals,
Federal Circuit.

Dec. 26, 1989.

Adrienne L. White, Burns, Doane, Swecker & Mathis, Alexandria, Va., argued, for appellant. With her on the brief was Robert S. Swecker.

Willard M. Hanger, Hilton Head Island, S.C., argued, for appellee. Richard G. Kline, Kline, Rommel & Colbert, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and ARCHER and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Cerveceria Centroamericana, S.A. (Centroamericana) appeals the decision, dated January 12, 1989, of the United States Patent and Trademark Office, Trademark Trial and Appeal Board (TTAB), granting Cerveceria India, Inc.'s (India's) petition to cancel Centroamericana's Registration No. 972,984 for the word mark MEDALLA DE ORO, for beer, on the grounds of abandonment. *See Cerveceria India Inc. v. Cerveceria Centroamericana, S.A.,* 10 USPQ2d 1064 (TTAB 1989) (Cancellation No. 14,654). We affirm.

*Background*

Centroamericana, a foreign beer producer, obtained a United States registration for MEDALLA DE ORO, for beer, in 1973. India sought to register the mark MEDALLA, for beer, in 1979, but its application was denied by the Patent and Trademark Office based on likelihood of confusion with Centroamericana's mark. Since 1978, India used the word mark MEDALLA on its beer in Puerto Rico. In 1985, India petitioned to cancel Centroamericana's registration asserting, inter alia, that Centroamericana had abandoned its mark by nonuse. *Id.* at 1065, 1067.

TTAB decided the cancellation based essentially on deposition testimony and certain answers to interrogatories. TTAB found that Centroamericana had imported shipments of MEDALLA DE ORO beer into the United States in 1971, 1972, 1975, 1977, and 1986, and that the 1970's shipments were "of very small quantities." *Id.* at 1067. In 1975, for example, only one shipment was made and consisted of only some four gallons. Based on the record evidence, TTAB concluded that India had made out a prima facie case of abandonment because nonuse for two or more years between 1977 and 1984 was established by India. Centroamericana argued, however, that India failed to establish prima facie abandonment. Centroamericana noted that although India provided evidence that Centroamericana had not *imported* MEDALLA DE ORO beer into the United States between 1977 and 1986, India offered no direct proof showing that the mark was not used in the United States for two consecutive years during that period. *See id.* at 1068.

To rebut the prima facie case found by TTAB, Centroamericana presented testimony by Carlos Castillo, Centroamericana's export manager and vice president of its U.S. subsidiary. Castillo stated that he had seen MEDALLA DE ORO beer for sale in Los Angeles " 'probably in 1978' " and in Washington, D.C. in either 1979 or 1980. *Id.* India countered with testimony by Howard Rosenberg, the General Manager of a Washington, D.C. beer importer and wholesaler and an expert in imported beers, that he checked various reference books and from them and his personal knowledge was not aware of any MEDALLA DE ORO beer ever on sale in Washington, D.C. *Id.* at 1068–69. TTAB found Castillo's testimony "vague," and noted that Castillo could not remember the circumstances or location, indicating that TTAB was affording the testimony little or no weight. *Id.* at 1068.

Centroamericana also presented evidence that in 1982, it established a U.S. subsidiary to market beers. This evidence was presented to show Centroamericana's intent to resume use of the MEDALLA DE ORO mark. TTAB found, however, that at that time, Centroamericana intended to market only "MONTE CARLO" brand beer with the hope of selling other brands sometime in the future. Two years later, in 1984, Centroamericana sought approval of a new MEDALLA DE ORO label from the U.S. Bureau of Alcohol, Tobacco and Firearms, and it received such approval in 1985. Centroamericana then contacted a number of distributors about handling MEDALLA DE ORO and eventually made shipments to the United States in 1986. *Id.* at 1067–68.

Based on this evidence, TTAB found that although Centroamericana had shown an intent to resume use as early as 1984, it had failed to rebut the prima facie case of abandonment between 1977 and 1984. Consequently, TTAB cancelled Centroamericana's MEDALLA DE ORO registration. *Id.* at 1069. This appeal followed. Centroamericana now argues that its rebuttal evidence was sufficient to overcome the prima facie case, even if we uphold TTAB's determination that prima facie abandonment was indeed established, and that an improper burden of proof was imposed on it by TTAB.

## OPINION

### I. *Establishing Prima Facie Abandonment*

A federal registration of a trademark may be cancelled if the mark is abandoned. Under the Lanham Act a federally registered trademark is considered abandoned if its "use has been discontinued with intent not to resume." 15 U.S.C. § 1127 (1988). Moreover, nonuse for two consecutive years constitutes "prima facie abandonment." *Id.*

■ Because a trademark owner's certificate of registration is "prima facie evidence of the validity of the registration" and continued use of the registered mark, the burden of proof is placed upon those who seek cancellation. 15 U.S.C. § 1057(b) (1988); *J.C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 962–63, 144 USPQ 435, 437 (CCPA 1965); *see Trade-marks: Hearings on H.R. 4744 Before the Subcomm. on Trade-marks of the House Comm. on Patents*, 76th Cong., 1st Sess. 65 (1939) (testimony of Sylvester Liddy, Esq.; Edward Rogers, Esq.; and Rep. Lanham), *reprinted in* 3 J. Gilson, *Trademark Protec-*

*tion and Practice* § 7–11 (1988) [hereinafter *J. Gilson* ]; *Trade-marks: Hearings Before the House Comm. on Patents*, 72d Cong., 1st Sess. 40 (1932) (testimony of Edward Rogers, Esq.), *reprinted in* 4 *J. Gilson, supra*, at § 45–28.[1] Accordingly, in a cancellation for abandonment, as for any other ground, the petitioner bears the burden of proof. Moreover, the petitioner's burden is to establish the case for cancellation by a preponderance of the evidence. *See Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979) (involving cancellation for likelihood of confusion); *Department of Justice, Fed. Bureau of Investigation v. Calspan Corp.*, 578 F.2d 295, 301, 198 USPQ 147, 151 (CCPA 1978) (same); *Massey Junior College, Inc. v. Fashion Inst. of Technology*, 492 F.2d 1399, 1403, 181 USPQ 272, 275 (CCPA 1974) (same). Although not binding on this court like Court of Customs and Patent Appeals (CCPA) precedent, another circuit court's decision, which provides persuasive authority, has applied the preponderance standard to an abandonment case. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938, 12 USPQ2d 1423, 1429 (7th Cir.1989).

The CCPA, however, has stated that the petitioner has a "heavy burden" to establish abandonment. *See, e.g., Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1031, 213 USPQ 185, 191 (CCPA 1982); *W.D. Byron & Sons v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 1003–04, 153 USPQ 749, 750 (CCPA 1967). Nonetheless, we cannot conclude that these statements relate to the standard of proof. Instead, we interpret these statements merely as noting the greater evidentiary difficulties a petitioner likely faces in a cancellation as opposed to an opposition proceeding. *See Massey Junior College*, 492 F.2d at 1402–03, 181 USPQ at 274–75.[2] Additionally, in

---

1. *See also Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99, 217 USPQ 1200, 1202 (5th Cir.1983); *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775–76, 210 USPQ 351, 356 (9th Cir.1981).

2. For example, as the CCPA suggested in *Massey Junior College*, a petitioner seeking cancellation based on likelihood of confusion may often face a greater hurdle if he attempts to prove actual

confusion because evidence may be difficult to find due to the passage of time since the trademark's registration. *See* 492 F.2d at 1402, 181 USPQ at 274. Likewise, a petitioner claiming abandonment will likely face assertions of intent to resume use. Such assertions may be strongly supported by evidence of a registrant's motive to resume use because of the strong goodwill that may have been established by a

a cancellation as opposed to an opposition proceeding, the registrant benefits from a presumption of validity. 15 U.S.C. § 1057(b) (1988).

Moreover, we are unable to discern from the legislative history of the Lanham Act any intention by Congress to raise the burden of proof for cancellation for abandonment above the normal civil burden of a preponderance of the evidence. Nor do we see any basis for a higher burden of proof in cancellation proceedings for abandonment than for likelihood of confusion. In many contexts, including trademark registration cancellation proceedings, a preponderance is the standard of proof to be presumed. "Without some statutory direction, a preponderance of the evidence will usually be 'sufficient.'" *Massey Junior College*, 492 F.2d at 1403, 181 USPQ at 275; *see* McCormick, *Evidence* § 339, at 793 (Cleary ed. 1972). Accordingly, we conclude that, as any cancellation petitioner, India bears a burden of proof by a preponderance of the evidence.

In the instant case, TTAB concluded that India established prima facie abandonment based on its findings that Centroamericana only shipped MEDALLA DE ORO beer to the United States in 1971, 1972, 1975, 1977, and 1986, and the 1970's shipments were "of very small quantities." *Cerveceria India, Inc. v. Centroamericana, S.A.*, 10 USPQ2d 1064, 1067 (TTAB 1989). Although Centroamericana does not contest the showing of eight years of no importations, it argues that India's proof was insufficient to establish prima facie abandonment because India did not provide "direct" evidence that the mark was not used within the United States. Centroamericana stresses that TTAB must have "inferred" that MEDALLA DE ORO was not used in order to have reached the conclusion that

prima facie abandonment had been established.

▇ In cases involving products made abroad, proof of nonuse of the trademark may require both proof of no importations into the United States and no domestic sales. *See, e.g., 7–11 Sales, Inc. v. Perma, S.A.*, 225 USPQ 170, 171–72 (TTAB 1984). We cannot conclude, however, that TTAB's implied finding that India proved no domestic sales between 1977 and 1986 was clearly erroneous.[3] Although Centroamericana suggests that "inference" and "implication" are inappropriate in establishing prima facie abandonment, we cannot agree. Especially when a party must prove a negative, as in proving abandonment through nonuse, without resort to proper inferences the burdened party could be faced with an insurmountable task. The protection due the registrant is provided by requiring that the inference have an adequate foundation in proven fact. Whenever an inference is based on pure speculation and "there is no basis ... to *infer* nonuse," a prima facie case of abandonment must fail. *P.A.B. Produits et Appareils de Beaute v. Satinine Societa in Nome Collettivo di S.A. e. M. Usellini*, 570 F.2d 328, 332–33, 196 USPQ 801, 804–05 (CCPA 1978).

▇ In this case an inference could properly be drawn that the trademark was not used domestically for at least two consecutive years. Based on its initial finding that no imports arrived for the eight years between 1977 and 1986, combined with its finding that the 1970's shipments were "of very small quantities," TTAB could properly infer that the mark was not used within the United States for at least two consecutive years between 1977 and 1986; small quantities of MEDALLA DE ORO beer imported in 1977 or earlier were unlikely to remain on sale in the United States after 1977. Thus, India established both no im-

mark's prior use. *Cf. Defiance Button Mach. Co. v. C & C Metal Prods. Corp.*, 759 F.2d 1053, 1060–61, 225 USPQ 797, 802–03 (2d Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985); *Massey Junior College*, 492 F.2d at 1403, 181 USPQ at 275. *See generally* Note, *The Song is Over but the Melody Lingers On: Persistence of Goodwill and the Intent Factor in Trade-*

*mark Abandonment*, 56 Fordham L.Rev. 1003 (1988).

**3.** This court reviews "TTAB's factual findings to determine whether they are 'clearly' or 'manifestly' wrong or erroneous." *Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1578, 222 USPQ 665, 666 (Fed.Cir.1984).

portations and no domestic sales, and therefore TTAB properly determined that prima facie abandonment was established.

## II. *The Effect of Establishing Prima Facie Abandonment*

▮ Although the legislative history of the Lanham Act is clear that *a* burden shifts to the trademark registrant once prima facie abandonment is shown,[4] it is unclear *what* burden shifts—the burden of proof or the burden of production. Moreover, a review of the case law addressing this question reveals ambiguous language and different positions among federal circuits. *See generally Sodima v. International Yogurt Co.*, 662 F.Supp. 839, 843–45, 3 USPQ2d 1641, 1644–45 (D.Ore.1987) (reviewing prior abandonment cases).

In a case involving a defense of abandonment in a trademark infringement suit, the United States Court of Appeals for the Fifth Circuit stated that once prima facie abandonment is established the registrant has the *"burden to demonstrate* that circumstances do not justify the inference of intent not to resume use." *Exxon Corp. v. Humble Exploration Co.*, 695 F.2d 96, 99, 217 USPQ 1200, 1202 (5th Cir.1983) (emphasis added). The *Exxon* court cited the CCPA's *Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 441 F.2d 675, 679, 169 USPQ 590, 593 (CCPA 1971), an opinion that also uses the "burden to demonstrate" language. *Exxon*, 695 F.2d at 99, 217 USPQ at 1202. We can discern nothing from either of these opinions, however, that clearly indicates whether "burden to demonstrate" means burden of *production* or burden of *proof.* Nonetheless, the United States Court of Appeals for the Eleventh Circuit has interpreted *Exxon* as enunciating a rule that the burden of *proof* shifts. *E. Remy Martin & Co., S.A. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1532, 225 USPQ 1131, 1136 (11th Cir. 1985); *see AmBrit Inc. v. Kraft Inc.* 805 F.2d 974, 994 & n. 106, 1 USPQ2d 1161, 1177 & n. 106 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987).

The Second and Ninth Circuit courts of appeals, on the other hand, appear to us to have decided that the burden of proof does *not* shift. The former has emphasized that a prima facie case of abandonment results in a "rebuttable presumption." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043–44, 208 USPQ 175, 177 (2d Cir. 1980); *see Silverman v. CBS Inc.*, 870 F.2d 40, 47, 9 USPQ2d 1778, 1783 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). The latter court has opined that prima facie abandonment "may be *rebutted* by showing valid reasons for nonuse or by proving lack of intent to abandon." *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396, 227 USPQ 44, 46 (9th Cir.1985) (citing *Saratoga Vichy*) (emphasis added).

The United States Court of Appeals for the Seventh Circuit and at least one district court have interpreted the Second and Ninth Circuits' use of the rebuttable presumption language as establishing the law of those circuits that the burden of proof *not* be shifted. *See Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 938, 12 USPQ2d 1423, 1428 (7th Cir.1989); *Sodima v. International Yogurt Co.*, 662 F.Supp. 839, 845, 3 USPQ2d 1641, 1645 (D.Ore.1987). We agree that this may have been exactly their intention, partly because creating a rebuttable presumption *need not* shift the burden of proof. *See generally* 21 C. Wright and K. Graham, Jr., *Federal Practice and Procedure* 562–73 (1977) [hereinafter *C. Wright* ].

---

**4.** *See Trade-marks: Hearings on H.R. 82 Before the House Comm. on Patents*, 78th Cong., 1st Sess. 24 (1944) ("The bill provides that discontinuance of use for 2 consecutive years shall be prima facie abandonment. It would shift the burden to the registrant.") (testimony of Daphne Robert, Esq.) [hereinafter *Hearings* ], *reprinted in* 4 *J. Gilson, supra* at § 45–30; *id.* at 28 (testimony of Sen. Hawkes and Karl Fenning, Esq.).

*See generally Hearings, supra* (addressing H.R. 82's incorporation of the incontestability, prima facie evidence of validity, and abandonment provisions in an effort to avoid making a trademark registration unassailable but still place at least a reasonable burden on the registrant to justify his right to the continuing protection of his federal registration).

Because we conclude that neither our predecessor, the CCPA, nor the other federal circuit courts have provided us with clear guidance as to which burden Congress intended to shift once prima facie abandonment is established, we directly examine evidence of Congress' intent.[5] However, as previously noted, the legislative history of the Lanham Act as to which burden it is that shifts is itself ambivalent, or at least ambiguous. *See supra* note 6. Consequently, we turn to other congressionally sanctioned law for guidance.

The Federal Rules of Evidence generally apply to TTAB proceedings. 37 C.F.R. § 2.122(a) (1988); *Yamaha Int'l Corp. v. Hoshino Gakki Co.,* 840 F.2d 1572, 1575–76, 6 USPQ2d 1001, 1004 (Fed.Cir.1988). Rule 301 of the Federal Rules of Evidence states:

> In all civil ... proceedings *not otherwise provided for by Act of Congress* or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but *does not shift to such party the burden of proof* in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

(emphasis added).

Although Rule 301 was adopted subsequent to the Lanham Act, we accept the view that Congress did intend the rule to effect presumptions[6] enunciated in prior as well as subsequent statutes except where Congress clearly expressed a contrary intent. *See* 21 *C. Wright, supra* at 582–83 (discussing what Congress meant by the Rule 301 language, "not otherwise provided for by Act of Congress"). Based on the legislative history of the Lanham Act, we

cannot say that Congress unambiguously indicated that the burden of *proof* shifts to the registrant once prima facie abandonment is established. Accordingly, we conclude that Rule 301 applies to the Lanham Act's abandonment provision, and therefore, only the burden of going forward (burden of production) shifts to the trademark registrant.

### III. *Centroamericana's Rebuttal of Prima Facie Abandonment*

■ Once TTAB determined that prima facie abandonment was established, Centroamericana came forward both with evidence attacking India's showing of nonuse and evidence showing intent to resume use of MEDALLA DE ORO. This dual approach was proper because a registrant may rebut a prima facie case either by disproving the underlying fact from which the presumption arises, i.e., two consecutive years of nonuse, or the presumed fact itself, i.e., no intent to resume use. We conclude, however, that TTAB correctly decided that both Centroamericana's attempts to rebut failed. Certainly, we cannot say that TTAB's factual assessments were clearly erroneous. Moreover, we see nothing to indicate that in making its determination TTAB placed anything greater than a burden of production on Centroamericana.

Centroamericana has mistaken which statements in TTAB's opinion were directed to which of the two types of rebuttal evidence Centroamericana presented. Erroneously, Centroamericana argues that TTAB placed on it the burden of proof to establish the second of the two elements of abandonment, requiring it to prove use of the mark to show intent to resume use. All TTAB actually said was that Centroam-

---

**5.** CCPA holdings are binding on this court, *see South Corp. v. United States,* 690 F.2d 1368, 1370, 215 USPQ 657, 657–58 (Fed.Cir.1982); substantive case law from the other federal circuits, however, provides only persuasive authority from which we may seek guidance. When other circuits are themselves divided, their guidance may be less persuasive than when their holdings are uniform.

**6.** Although "prima facie," the language at issue in this case, does not always mean a "presumption," *see* J. Wigmore, *Evidence* § 2494 (J. McNaughton ed. 1961), the legislative history of the Lanham Act indicates that Congress was using the term in its presumption sense. *See Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcomm. on Trade-marks of the House Comm. on Patents,* 77th Cong., 1st Sess. 112 (1941) (testimony of Wallace Martin, Esq.), *reprinted in J. Gilson, supra* at § 33–29.

ericana failed to provide sufficient evidence to negate the evidence on the first element, *nonuse*, here between 1977 and 1984. *See Cerveceria*, 10 USPQ2d at 1068. TTAB did not, however, place any burden upon Centroamericana to prove use of the trademark in order *to show intent to resume use*.

Centroamericana presented testimony from Carlos Castillo, Centroamericana's export manager and vice president of its U.S. subsidiary, that he saw MEDALLA DE ORO beer for sale in Los Angeles " 'probably in 1978' " and in Washington, D.C. in "either" 1979 or 1980. *Id.* If believed, Centroamericana's case appears to be that at worst, it had shown domestic sales between 1977 and 1980, and that in 1982 and 1984 it took steps to resume use by forming its new U.S. subsidiary and seeking approval of a new MEDALLA DE ORO label, even though the subsidiary did not actually receive MEDALLA DE ORO marked beer until 1986.

TTAB, however, afforded the testimony of Carlos Castillo little or no weight based partly on its assessment that his testimony was "to say the least, vague." *Id.* In addition, in TTAB's view Castillo's testimony was discredited by the testimony of Howard Rosenberg, the General Manager of a Washington, D.C. beer importer and wholesaler. Rosenberg testified that he was not aware of any MEDALLA DE ORO beer on sale in Washington, D.C. We see nothing to question this credibility determination, and therefore conclude that TTAB's finding of nonuse between 1977 and 1984 was not clearly erroneous.

As to whether Centroamericana had rebutted what we believe was a Rule 301 presumption of abandonment with its evidence of intent to resume use, TTAB's opinion merely said:

[I]t is our view that [Centroamericana] abandoned its mark by virtue of its nonuse after 1977. While, beginning in 1984, it undertook activities to again use the mark in the United States, these lat-

ter efforts represent a new and separate use, and cannot serve to cure its abandonment during the period when petitioner commenced its use of the mark.

*Id.* at 1069. TTAB does not explicitly discuss intent to resume use after 1984, but implies such intent is irrelevant because Centroamericana has not rebutted the presumption of abandonment by showing intent to resume use between 1977 and 1984.

TTAB's opinion indicates that it found Centroamericana's evidence that it had undertaken "activities to again use the mark" as sufficient to show intent to resume use, but only as of 1984 and not earlier, i.e., during the prior six years of nonuse.[7] The earliest evidence of intent to resume use in the record before us is Castillo's testimony that when Centroamericana's U.S. subsidiary was formed in 1982 the company intended ultimately to use the subsidiary to market the MEDALLA DE ORO brand. Joint Appendix at 53, *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, No. 89–1369 (Fed.Cir. filed July 31, 1989). Centroamericana argues that TTAB's opinion ignored this testimony and expressed no credibility determination as to this evidence. However, whether the board failed to consider it at all or merely failed to mention it in its opinion we need neither presume nor decide because we may "draw from the facts found those inferences that are necessary to support the ultimate finding": that Centroamericana failed to provide credible evidence of intent to resume use except for the period starting in 1984. *See ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed.Cir.1984). Therefore, we can presume TTAB found the 1982 evidence insufficient, a finding we cannot say is clearly erroneous.

Even if TTAB did ignore this evidence, any such error was harmless in this case because Centroamericana failed even to attempt to show intent to *resume* use between 1977 and 1982. When no evidence of intent to resume use is offered for a period

7. Once a trademark is abandoned, its registration may be cancelled even if the registrant resumes use. *Mission Dry Corp. v. Seven-up Co.*,

193 F.2d 201, 203, 92 USPQ 144, 146 (CCPA 1951).

of proven nonuse of at least two consecutive years, then as to those years—here 1977 to 1982—TTAB certainly may conclude the registrant has not met his burden of production, and thus has failed to rebut the presumption of abandonment. Moreover, TTAB did not err in concluding that India carried its burden of proof by a preponderance of the evidence. Accordingly, we must uphold TTAB's decision to cancel Centroamericana's MEDALLA DE ORO registration because of abandonment.

AFFIRMED.

ARCHER, Circuit Judge, concurring in result.

Section 45 of the Lanham Act provides, *inter alia*, that "non-use for two consecutive years shall be prima facie abandonment." 15 U.S.C. § 1127 (1988). The Board found such non-use by Centroamericana of its trademark "MEDALLA DE ORO" for more than two consecutive years and, as the majority correctly concludes, that factual finding is not clearly erroneous.

The only evidence [*] indicating that Centroamericana did not abandon its trademark is Mr. Castillo's "vague" testimony, which was not given credence by the Board and which it indicated was contradicted by other testimony. As we have stated on numerous occasions, credibility determinations made by the trier of fact are "virtually unreviewable" in this court. *See Hambsch v. Department of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Nothing in this case counsels that we disturb the Board's weighing of Mr. Castillo's testimony.

Accordingly, the Board did not err in holding that Centroamericana had abandoned its trademark "MEDALLA DE ORO."

---

[*] Centroamericana's evidence that it began to use its mark again in 1984 after the mark had already been abandoned is, as the majority opinion points out, irrelevant to the issue of whether it earlier had abandoned its mark. *Mission Dry Corp. v. Seven–Up Co.*, 193 F.2d 201, 203, 92 USPQ 144, 146 (CCPA 1951).