**THIS OPINION
IS A PRECEDENT OF
THE TTAB**

Mailed:  September 5, 2007

UNITED STATES PATENT AND TRADEMARK OFFICE
————

Trademark Trial and Appeal Board
————

Quality Candy Shoppes/Buddy Squirrel of Wisconsin, Inc.
v.
Grande Foods
————

Cancellation No. 92044407
————

Joseph A. Kromholz of Ryan, Kromholz & Manion for Quality
Candy Shoppes/Buddy Squirrel of Wisconsin, Inc.

Matthew A. Newboles of Stetina Brunda Garred & Brucker for
Grande Foods.

————

Before Walters, Grendel and Wellington, Administrative
Trademark Judges.

Opinion by Walters, Administrative Trademark Judge:

Quality Candy Shoppes/Buddy Squirrel of Wisconsin, Inc.

filed a petition to cancel the registration of Grande Foods

for the mark KRAZY KORN for "toasted corn product for snack

purposes," in International Class 30.[1]

As grounds for the petition to cancel, petitioner

asserts that respondent has abandoned its mark.

Respondent, in its answer, denied the salient allegations of the claim and asked the Board to find that respondent continues to use its mark in connection with the identified goods and that it has not abandoned this mark.

*The Record as Submitted*

The record consists of the pleadings and the file of the involved registration. By notice of reliance, petitioner submitted various responses of respondent to several specified interrogatories and requests for admission of petitioner, the declaration and specimen submitted by respondent in connection with the subject registration under Section 8 of the Trademark Act on September 30, 2004, a copy of petitioner's pending trademark application for the mark CRAZY CORN and a copy of an office action therein.

Respondent submitted the testimony depositions, with exhibits, of Michael Gallegos and Scott Gallegos, respondent's vice president and vice president of respondent's exclusive distributor, respectively; and, by notice of reliance, a copy of its trademark registration and the PTO assignment records therefor. Respondent also filed by notice of reliance, and for the alleged purpose of clarification and completeness, copies of confidential documents produced to petitioner in lieu of responses to

---

[1] Registration No. 0767659, issued March 31, 1964, and renewed for a second time for a period of ten years. The registration includes a disclaimer of KORN apart from the mark as a whole.

interrogatories, as well as supplemental responses to petitioner's interrogatories and admissions requests.  Both parties filed briefs on the case.

*Petitioner's Motion to Strike*

*1.  Motion and Parties' Respective Positions*

Petitioner filed a motion to strike Exhibits C, D and E submitted by respondent pursuant to its notice of reliance. Respondent filed its response in opposition and the Board deferred consideration of the motion until final decision. Therefore, we take up petitioner's motion at this time.

Exhibit C consists of several pages of confidential documents pertaining to respondent's sales that were submitted under seal and served supplementally by respondent in lieu of responses to specified interrogatories of petitioner.  Exhibit D consists of respondent's supplemental responses to petitioner's first set of interrogatories. Exhibit E is respondent's supplemental responses to petitioner's first set of requests for admission.

The record shows that discovery closed on October 25, 2005; that respondent served responses to petitioner's interrogatories and admission requests on November 18, 2005; and that on May 5, 2006, respondent served petitioner with the noted supplemental responses to discovery (i.e., Exhibits C, D and E).  Respondent served the supplemental responses more than a month after petitioner's testimony

period closed and four days before respondent took the testimony of its two witnesses. Respondent stated that the supplemental responses were necessary "to clarify the use of [respondent's] trademark 'Krazy Korn' by its distributor G&A Snack Distributing" (respondent's notice of reliance, p. 3).

Petitioner contends that these supplemental responses are improperly filed and should be stricken because they were filed during trial, citing *United States v. Boyce*, 148 F.Supp.2d 1069, 1086 (S.D. Cal. 2001); and that respondent failed to provide substantial justification for its failure to supplement its responses earlier, citing Fed. R. Civ. P. 37(c) and 26(e)(2). Petitioner also notes that the stated reason for respondent's supplementation of its responses is not that new information was discovered, but that respondent changed its interpretation of petitioner's requests; that this rationale is disingenuous, particularly in view of respondent's Section 8 declaration for the registration at issue, wherein respondent stated that "the owner is using the mark in commerce on or in connection with all goods … listed in the existing registration," signed by respondent's vice president, Michael Gallegos, and filed on March 30, 2004[2]; and that respondent has provided misleading information in this proceeding.

---

[2] A copy of respondent's Section 8 filing was submitted herein as Exhibit C of petitioner's notice of reliance.

Respondent contends that its supplemental responses are proper because, under 37 C.F.R. §2.120(j)(5), petitioner submitted at trial less than all of respondent's answers to interrogatories and fewer than all of respondent's admissions, and respondent is entitled to submit additional responses to interrogatories and admissions for fairness and completeness. Additionally, respondent contends that it was substantially justified in serving supplemental responses because its original responses interpreted the interrogatories and admission requests as asking for information only about respondent and not about its exclusive distributor and that supplementation was necessary "to provide full disclosure of the facts and so as not to be misleading in terms of crediting respondent with a prior use of the 'Krazy Korn' trademark" (response to motion, p. 4). Respondent argues that petitioner is not prejudiced by the supplemental responses because it had an opportunity to cross examine respondent's vice president shortly after receiving the supplemental responses.

2. *Admissions:*

Petitioner's requests for admission made of record herein asked respondent to admit that it:

- "cannot verify continuous and uninterrupted use of the trademark KRAZY KORN in connection with toasted corn product for snack purposes

since the original filing date of the

underlying application"; or for each of the

years 2000, 2001, 2003, 2004 and 2005.[3]

- "did not sell any toasted corn product for

  snack purposes in interstate commerce in

  connection with the trademark KRAZY KORN" in

  each of the years 2000 through 2005.

In its initial response to these admission requests, respondent issued denials with respect to 2005 and admissions for each of the remaining years, and stated that "following a reasonable inquiry by Registrant, the information currently known or readily obtained by Registrant is insufficient to enable Registrant to admit or deny the balance of this request[;] discovery and investigation continue."

In its supplemental response to petitioner's request for admission, respondent made the following general statement in response to each request: "Admit that Registrant did not sell popcorn under the KRAZY KORN trademark directly to the public …, Registrant does not and has not directly sold to the consuming public its toasted corn products under the KRAZY KORN trademark.  Registrant has relied upon its distributor G&A Snack Distributing to

---

[3] The mark and registration were assigned to respondent on May 23, 2000.

make sales to retail grocery store outlets accessible to the public."

With regard to the admission requests noted above, for the years 2002 through 2005, respondent also made the following supplemental statement: "Deny that Registrant did not authorize the license and/or sale of toasted corn products under the KRAZY KORN trademark to G&A …. Deny that G&A did not sell toasted corn products under the KRAZY KORN trademark to retail grocery outlets …."

With regard to the admission requests noted above, for the years 2000 and 2001, respondent also made the following supplemental statement: "Following a reasonable inquiry by Registrant, the information currently known or readily obtained by Registrant is insufficient to enable Registrant to admit or deny whether G&A sold toasted corn products under the KRAZY KORN trademark to retail grocery outlets …."

3.   *Interrogatories:*

Petitioner's interrogatory no. 1 made of record herein asked respondent for details about all KRAZY KORN marks of respondent, the relevant goods in connection with which the marks are used, dates and circumstances of first use and use in commerce, whether such marks are still in use, and details regarding any periods of nonuse. In its original response to this interrogatory, respondent referenced only the registered mark herein for the identified goods;

7

referenced the date of first use stated on the face of the registration, i.e., August 20, 1951; stated that the trademark is still in commercial use; identified the manner of use as "[p]opcorn product was manufactured and sold to major grocery and retail outlets under the KRAZY KORN trademark"; and stated that it had insufficient information to respond to the interrogatory requesting information about periods of non-use.

Additional interrogatories made of record by petitioner requested the nature of and expenditures for all advertising and promotion of such marks for such goods (Nos. 6 & 7), to which respondent stated it would produce non-private responsive documents; and details regarding any periods of discontinued use of same (No. 9), to which respondent stated that it had insufficient information to enable it to provide a response.

As with its supplemental response to petitioner's admission requests, respondent's supplemental response to interrogatories provided new answers to various questions based upon respondent's "reinterpretation" of those questions as encompassing any use of the mark by G&A Distributing.

4.  *The Motion to Strike is Granted*

First, we find that respondent is not entitled to rely upon Trademark Rule 2.120(j)(5), 37 C.F.R. §2.120(j)(5), in

8

this instance.  That rule creates an exception to the rule that a party may not submit its own answers to discovery by permitting an answering party to make of record additional discovery responses where the asking party has not made of record all of the discovery responses, if the additional responses "should in fairness be considered so as to make not misleading what was offered by the inquiring party." This rule does not pertain to the situation herein where, during trial, respondent submitted entirely new responses, characterized as supplemental, to discovery requests it had previously responded to with different answers.  We find respondent's reliance on Trademark Rule 2.120(j)(5) to be misplaced in view of the fact that the new/additional discovery responses respondent seeks to introduce under the rule, i.e., responses which respondent contends were "omitted" by petitioner and which are alleged to be necessary to provide proper context for the discovery responses which petitioner actually submitted, were not even provided to petitioner until after petitioner's testimony period had closed.

A party is required to respond completely to discovery to the best of its ability and to supplement discovery responses as soon as it becomes aware of new information. Fed. R. Civ. P. 26(e).  A basic principle underpinning trademark law in the United States is use of a mark in

commerce; and years of precedent make it very clear that proper use of a mark by a trademark owner's licensee or related company constitutes "use" of that mark attributable to the trademark owner. We find no ambiguity in this regard in either petitioner's request for admission or its interrogatories. It was not until after petitioner presented its case at trial that respondent decided to "reinterpret" the discovery requests and provide new answers, but not "new information." We agree with petitioner that respondent's original answers to interrogatories and admissions were misleading. We find respondent's statement that it "misunderstood" the admission requests and interrogatories to be specious in view of the fact that respondent was comfortable stating that it used the mark in commerce in its declaration under Section 8; and, in its response to interrogatory no. 1(f), respondent identified its manner of use by stating "[p]opcorn product was manufactured and sold to major grocery and retail outlets under the KRAZY KORN trademark." Both of these statements clearly encompass the use of the mark by respondent's distributor and there is nothing in petitioner's discovery requests to suggest that any use by a distributor or related company is not part of the inquiry.

In any event, respondent's supplemental discovery responses are untimely and it has given no viable reason for

delaying its supplementation of its discovery responses to after trial had commenced.  The motion to strike respondent's Exhibits C, D and E is granted and these exhibits have not been considered.  Moreover, statements in the depositions of Messrs. Gallegos that pertain to facts disclosed only in the stricken exhibits have not been considered.[4]  Respondent cannot rely on information that was not properly disclosed during discovery.  *See TBMP* §§ 408.02 and 408.03 (2d ed. rev. 2004).

*Abandonment Analysis*

The Trademark Act provides for the cancellation of registrations if the registered mark has been abandoned. See Section 14 of the Trademark Act, 15 U.S.C. §1064.  Under Section 45 of the Trademark Act, 15 U.S.C. §1127, a mark is considered abandoned when "its use has been discontinued with intent not to resume such use."  The definition of abandonment is found in this provision, as follows:

> A mark shall be deemed to be "abandoned" if either of the following occurs:
>
> **(1)** When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.
>
> …

---

[4] Thus, all statements about the distribution of the identified goods under the KRAZY KORN mark by a related company or licensee of respondent have not been considered.

See 15 U.S.C. §1127.

In a cancellation proceeding on the ground of abandonment, because registrations are presumed valid under the law, the party seeking cancellation bears the burden of proving a prima facie case of abandonment by a preponderance of the evidence. *See On-Line Careline Inc. v. America Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471 (Fed. Cir. 2000); and *Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307 (Fed. Cir. 1989). If petitioner presents a prima facie case of abandonment, the burden of production, i.e., going forward, then shifts to the trademark holder to rebut the prima facie showing with evidence. *Cerveceria v. Cerveceria, supra.*

Abandonment is a question of fact. *See Stock Pot Restaurant, Inc. v. Stockpot, Inc.*, 737 F.2d 1576, 1579, 222 USPQ 665, 667 (Fed. Cir. 1984). Thus, any inference of abandonment must be based on proven fact. A party claiming that a mark has been abandoned must show "non-use of the mark by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." *See Stetson v. Howard D. Wolf & Associates*, 955 F.2d 847, 850 (2d Cir. 1992). Proof of non-use for three consecutive years, however, constitutes prima facie evidence of abandonment, because it carries an inference of lack of intent to resume use. *See supra,* 15 U.S.C. §1127. *See also*

*Emergency One, Inc. v. American FireEagle, Ltd.,* 228 F.3d 531, 56 USPQ2d 1343 (4th Cir. 2000).

Neither party addresses use of the mark on the identified goods prior to the assignment of the mark and registration to respondent in May 2000. Therefore, petitioner has not established a prima facie case of abandonment during that period. The parties' discussion at trial and in their briefs is limited to the period from May 2000 through, presumably, the end of 2005, as the first testimony period began in early 2006. Therefore, the issue before us is whether petitioner has established that respondent abandoned its mark, as abandonment is defined in the law, during the period from May 2000 to the end of 2005. There is no evidence regarding respondent's intent, therefore, the question is whether petitioner has made a prima facie case establishing respondent's nonuse of the KRAZY KORN mark in connection with toasted corn products for a consecutive period of three years.

In response to interrogatory no. 1(f), described supra and relied upon by petitioner, respondent identified its manner of use of the mark as follows: "[p]opcorn product was manufactured and sold to major grocery and retail outlets under the KRAZY KORN trademark." In his testimony deposition, Mr. Michael Gallegos, respondent's vice president, stated that popcorn is a toasted corn product for

13

snack purposes.  Among the admissions relied upon by petitioner and described supra, respondent admitted that it did not sell any toasted corn product for snack purposes in interstate commerce in connection with the trademark KRAZY KORN in any of the years 2000 through 2004.  Taken together, this establishes petitioner's prima facie case of abandonment based on three consecutive years of nonuse.  Thus, the burden of going forward and rebutting the prima facie showing, with evidence, shifted to respondent.  Based on the record properly before us, respondent has not met its burden.  Therefore, we conclude that respondent has abandoned the mark in the subject registration.

*Decision:*  The petition to cancel is granted.