This Opinion is a
Precedent of the TTAB

Mailed: December 7, 2018

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**

————

*TV Azteca, S.A.B. de C.V.*

*v.*

*Jeffrey E. Martin*

————

Cancellation No. 92068042

————

John M. Murphy of Arochi Marroquin & Lindner SC, for TV Azteca, S.A.B. de C.V.

Jeffrey E. Martin, appearing *pro se*.

————

**Before Wolfson, Adlin and Hightower, Administrative Trademark Judges.**

**Opinion by Wolfson, Administrative Trademark Judge:**

Jeffrey E. Martin (Respondent) owns a registration for the mark depicted below

for "entertainment services, namely live performances by a musical group."[1]



On March 7, 2018, TV Azteca, S.A.B. de C.V. (Petitioner) petitioned to cancel the

registration on the ground of abandonment. In his answer, Respondent denies the

salient allegations of the petition to cancel.[2]

---

[1] Reg. No. 1990874, issued August 6, 1996; renewed.

[2] Although Respondent's mark MYST is displayed in stylized letters, the parties do not

The Trademark Trial and Appeal Board recently established a pilot program to explore procedures for expediting certain cancellation proceedings to further the USPTO's goal of maintaining the accuracy and integrity of the U.S. Trademark Register. This newly established "expedited cancellation" procedure is initiated by the Board.[3] On an on-going basis, the Board identifies cancellation cases, such as this one, that have not resulted in disposition by default and in which the only claims are abandonment or nonuse (or both). Cases with counterclaims are ineligible for the program. Once a case is identified as a candidate for the expedited cancellation program, the Board participates in the parties' discovery conference to discuss voluntary stipulation to one or more of the Board's several Accelerated Case Resolution (ACR) options, including pretrial final disposition on the merits, *see* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 528.05(a)(2) (2018), or abbreviated trial on the merits, *see* TBMP § 702.04.

---

address what, if any, impact this may have on Petitioner's claim or Respondent's alleged nonuse. We find that the stylization does not affect the outcome of our decision.

[3] The USPTO earlier explored the possibility of establishing a procedure, known as a "streamlined cancellation proceeding," that would be initiated by a potential petitioner when it filed its petition to cancel. Under the streamlined plan, the petition would be limited to the grounds of nonuse or abandonment (or both), and the petition would be accompanied by any evidence or testimony in support of the claim(s).Counterclaims would not be permitted, very limited discovery would be allowed only when granted by the TTAB for good cause shown, proceedings would be conducted on an abbreviated schedule, there would be no oral hearing, and the TTAB would issue a decision within an expedited timeframe. The Office published a Request for Comments on streamlined proceedings in the Federal Register, 82 Fed. Reg. 22517 (May 16, 2017). However, consideration of the streamlined procedure is presently on hold while we explore the efficacy of the current pilot, the "expedited cancellation proceeding." Unlike the streamlined model, the stipulations into which parties may enter in an expedited cancellation proceeding include all options available under the Board's general ACR procedures.

This case was identified as a candidate for expedited cancellation, the Board participated in the parties' discovery conference, and the parties agreed to litigate this case as an expedited cancellation proceeding.[4] The parties agreed to exchange initial disclosures but dispense with formal discovery. Both parties filed testimony and documentary evidence together with their main briefs, and Petitioner filed a rebuttal brief.[5]

## I. The Pleadings

Petitioner pleads ownership of Application Serial No. 87427925 to register the mark **MYST** (in standard characters) for "entertainment in the nature of theater

---

[4] 5 TTABVUE. Citations in this opinion are to the TTABVUE docket entry number and, where applicable, the electronic page number where the document or testimony appears. Because the Board primarily uses TTABVUE in reviewing evidence, it prefers that citations to non-confidential parts of the record include the TTABVUE docket entry number and the TTABVUE page number. For material or testimony that has been designated confidential and which does not appear on TTABVUE, the TTABVUE docket entry number where such material or testimony is located should be included in any citation. *See RxD Media, LLC v. IP Application Dev. LLC,* 125 USPQ2d 1801, 1804 (TTAB 2018); *Turdin v. Trilobite, Ltd.,* 109 USPQ2d 1473, 1476 n.6 (TTAB 2014); TBMP §§ 801.01, 801.03.

[5] Respondent unnecessarily filed his initial disclosures with the Board. Even under expedited procedures, parties should not file their initial disclosures with the Board; initial disclosures are not admissible evidence unless resubmitted at trial under a notice of reliance, where appropriate, or through testimony. Trademark Rule 2.120(k)(8), 37 C.F.R. § 2.120(k)(8). Thus, although Respondent's initial disclosures were not of record, because Petitioner referred to and relied on them in presenting its case-in-chief, we consider them stipulated into evidence. *See Bayer Consumer Care AG v. Belmora LLC*, 110 USPQ2d 1623, 1627 (TTAB 2014) ("Because both parties submitted (in whole or in part) Mr. Belcastro's declaration, we deem them to have stipulated the declaration into the record, and we hereby consider the entire declaration for whatever evidentiary value it may have...."), *rev'd on other grounds,* 84 F.Supp.3d 490, (E.D.Va. 2015), *vacated and remanded,* 819 F.3d 697 (4th Cir. 2016), *cert. denied,* 137 S.Ct. 1202, U.S. (2017), *aff'd on remand __* F. Supp.3d __ , 2018 WL 4390731 (E.D.Va. 2018), *on appeal* 4th Cir. (filed October 19, 2018). *Cf. Azeka Bldg. Corp. v. Azeka,* 122 USPQ2d 1477, 1478 n.4 (TTAB 2017) (Board deemed materials not proper subject matter for a notice of reliance as having been stipulated into the record because adverse party treated them as such).

productions; entertainment, namely, a continuing variety show broadcast over television; presentation of variety shows" in International Class 41,[6] and alleges that its application was refused registration based on a likelihood of confusion with the mark in Respondent's registration. As the sole ground for cancellation, Petitioner alleges that Respondent abandoned his **MYST** mark by discontinuing its use "for at least three years preceding the filing of this Petition to Cancel," with no intent to resume use.[7]

Respondent asserts that he has continually used the mark **MYST** for a musical group, and that "the group MYST performed live 8 times" from March 25, 2015 to September 4, 2017.[8] Respondent also asserts that he has performed live as an acoustic solo artist using the mark **MYST**.[9]

## II. Description of the Record

The pleadings and, pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the registration file of Respondent's mark are automatically of record.

### A. Petitioner's Testimony and Evidence

Petitioner filed the following testimony and evidence:

- Declaration of John M. Murphy, Petitioner's counsel, and accompanying exhibits Nos. 1-25.[10]

---

[6] Filed April 27, 2017, under Section 44(e), 15 U.S.C. § 1126(e), on the basis of Mexican Reg. No. 1744966.

[7] 1 TTABVUE 3.

[8] 9 TTABVUE 3. Respondent's Statement, as discussed more fully below, is not properly sworn or otherwise verified under Trademark Rule 2.20, 37 C.F.R. § 2.20.

[9] 9 TTABVUE 4.

[10] 8 TTABVUE. Mr. Murphy's testimony introduces and identifies the exhibits as published

- Copies of the New Jersey Revised Statutes Title 33, Sections 33:1-12; 33:1-12.18; 33:1-18; 33:1-19; 33:1-19.1; 33:1-2; and 33:1-26 (2013), on the issuance of licenses for intoxicating liquors.[11]

### B. Respondent's Testimony

Respondent filed an unsworn statement with accompanying exhibits A-K.[12]

## III. Discussion

### A. Standing

Standing is a threshold issue that must be pleaded and proven by the plaintiff in every inter partes case. Petitioner must establish that it has a "real interest," i.e., a "reasonable" basis for its belief of damage. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.,* 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185 (TTAB 1982). Here, the refusal of Petitioner's pleaded application based on Respondent's registration establishes its real interest and standing in this proceeding.[13] *Weatherford/Lamb Inc. v. C&J Energy Servs. Inc.*, 96 USPQ2d 1834, 1837 (TTAB 2010) ("Inasmuch as petitioner has made of record the USPTO Office action suspending its pleaded application pending the possible refusal to registration under Section 2(d) of the Lanham Act based on an alleged likelihood of confusion with respondent's

---

articles and official records, but does not address the content of the exhibits.

[11] 7 TTABVUE 16-30.

[12] 9 TTABVUE.

[13] The pleaded application and refusal were made of record under the Murphy Declaration at 8 TTABVUE 6-19, Exhibits 1 and 2.

registration, there is no question that petitioner has standing to bring this petition for cancellation."); *LifeZone Inc. v. Middleman Grp., Inc.*, 87 USPQ2d 1953, 1959 (TTAB 2008); *see also Lipton Indus., Inc.,* 213 USPQ at 189.

## B. Abandonment

### 1. Statement of the Law of Abandonment

The Trademark Act provides for the cancellation of a registration if the registered mark has been abandoned. *See* Section 14 of the Trademark Act, 15 U.S.C. § 1064. Under Section 45 of the Trademark Act, 15 U.S.C. § 1127, a mark is deemed abandoned:

> When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

As the Board has explained, "[b]ecause registrations are presumed valid under the law, the party seeking their cancellation bears the burden of proving a prima facie case of abandonment by a preponderance of the evidence." *Yazhong Investing Ltd. v. Multi-Media Tech. Ventures, Ltd.*, 126 USPQ2d 1526, 1532 (TTAB 2018); *see also On-Line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1476 (Fed. Cir. 2000); *Exec. Coach Builders, Inc. v. SPV Coach Co.,* 123 USPQ2d 1175, 1180-81 (TTAB 2016). Proof of nonuse for three consecutive years constitutes prima facie evidence of abandonment "because it supports an inference of lack of intent to resume use." *Yazhong Investing*, 126 USPQ2d at 1533; *see also On-line Careline,* 56 USPQ2d at 1476. If the petitioner presents a prima facie case of abandonment, the burden of

production, i.e., of going forward, then shifts to the trademark holder to rebut the prima facie showing with evidence of either: (1) use of the mark during the statutory period; or (2) an intent to resume use. *Rivard v. Linville*, 133 F.3d 1446, 45 USPQ2d 1374, 1376 (Fed. Cir. 1998); *Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307, 1311 (Fed. Cir. 1989). The burden of persuasion, however, always remains with the petitioner. *Rivard*, 45 USPQ2d at 1376. Because abandonment is a question of fact, any inference of abandonment must be based on proven fact. *Cerveceria Centroamericana*, 13 USPQ2d at 1310 ("The protection due the registrant is provided by requiring that the inference [of abandonment] have an adequate foundation in proven fact. Whenever an inference is based on pure speculation and 'there is no basis … to *infer* nonuse,' a prima facie case of abandonment must fail.") (quoting *P.A.B. Produits et Appareils de Beaute v. Satinine Societa in Nome Collettivo di S.A. e. M. Usellini*, 570 F.2d 328, 196 USPQ 801, 804-05 (CCPA 1978)).

### 2. Evidence of Abandonment

We begin with Respondent's initial disclosures.[14] Respondent's disclosures consist of the following:

- Exhibit A – A copy of a letter dated May 8, 2018 from "Dave Dillman, D-Toxin Productions" addressed to Respondent.

  The letter reads, in pertinent part: "Enclosed is the balance of the payment for Myst performing at my show on May 3rd. … That's the third time in the last four years you saved my ass when a band canceled at the last minute."

---

[14] 6 TTABVUE.

- Exhibit B – A photograph of Respondent. Petitioner provided a copy of an article (dated May 8, 2018) about a Maryland music festival in which the photograph appeared.[15]

- Exhibit C – A copy of a flyer promoting a "MYST" concert on "March 25th" [no year specified] at the Pennant East in Bellmawr, New Jersey.

- Exhibit D – A copy of a photograph of Mr. Martin, shown holding a microphone, apparently singing. The photograph is undated. No other persons are in the picture.

- Exhibit E – A copy of the front and back views of a MYST business card, undated.

- Exhibit F – A photograph of a MYST handstamp, undated.

- Exhibit G – A photograph of three MYST shirts, undated.

- Exhibit H – A photograph of MYST golf balls, undated.

- Exhibit I – A photograph of a page from a yearbook, undated, including a picture of Respondent and the attribution "Long live Myst."

- Exhibit J – Undated photographs of two Pennsylvania license plates: "MYST" and "MYST ROX."

- Exhibit K – A copy of a GoDaddy "My Products" page showing "myst.rocks" and "jeffmartin.us" domains, undated.[16]

---

[15] 8 TTABVUE 154-61. The actual date of the festival is not provided in the article or photograph. While Respondent included an Internet link to the article, the article is of record only because Petitioner submitted a copy of it under declaration of its counsel. The Board does not accept Internet links as a substitute for submission of a copy of the resulting page. *See In re Aquitaine Wine USA, LLC,* 126 USPQ2d 1181, 1194 n.21 (TTAB 2018)*; In re Olin Corp.,* 124 USPQ2d 1327, 1332 n.15 (TTAB 2017) ("Because the information displayed at a link's Internet address can be changed or deleted, merely providing a link to a website is insufficient to make information from that site of record."); *In re Planalytics,* 70 USPQ2d 1453, 1458 (TTAB 2004).

[16] Petitioner argues that "the only documents Mr. Martin may use to prove his use or excusable nonuse of the mark MYST & Design are those identified in or attached to his initial disclosures of June 27, 2018." 7 TTABVUE 4. Although the parties dispensed with pretrial disclosures, Respondent identified a "Dave Dillman of D-Toxin Productions" (no title

Respondent also made statements about these exhibits in his initial disclosures, but they are not properly sworn or otherwise verified under Trademark Rule 2.20, 37 C.F.R. § 2.20.[17] Therefore, they are not testimony. *McDonald's Corp. v. McKinley,* 13 USPQ2d 1895, 1897 n.4 (TTAB 1989) ("unsworn statement does not constitute testimony"); *In re Dermahose Inc.,* 82 USPQ2d 1793, 1797 (TTAB 2007) ("In effect, the common feature of oaths, sworn statements, unsworn declarations under penalty of perjury, and declarations under Rule 2.20 is that the person making the statement is subjecting himself or herself to criminal penalties for making statements that the person knows are not true."); *see also* TBMP § 703.01(h) (stating that testimony by affidavit or declaration pursuant to 37 C.F.R. § 2.20 must be made in conformance with the Federal Rules of Evidence). Although the initial disclosures are deemed stipulated into the record, Respondent's unsworn statements are not.[18]

Petitioner focuses on Exhibit C, the flyer from Pennant East. The flyer mentions "March 25th" as the date MYST was scheduled to perform. Petitioner contends that

---

provided) as a potential witness in his initial disclosures. 6 TTABVUE 2. If Respondent had chosen, he could have called Mr. Dillman to introduce additional documents under his testimony, subject to cross-examination, during his ACR testimony/briefing period.

[17] For example, Respondent states that Exhibit D is a photograph "showing MYST performing on March 15th, 2016." 6 TTABVUE 3. However, the photograph is of a single individual in an undisclosed location, and bears no date. Inasmuch as Respondent's statement is unverified, it does not cure the deficiency in the exhibit.

[18] Respondent submitted duplicate copies of his initial disclosures under a different, but also unsworn, statement "declaring" that the group MYST performed eight times during the relevant period (including the disputed Pennant East performance and several "private parties"). 9 TTABVUE 2-6. Although the parties agreed that testimony would be presented by affidavit, 5 TTABVUE, the statement at the end of Respondent's declaration that he "declare[s]" that "the foregoing is true and correct" is not in affidavit form and therefore the unsworn statement has not been considered.

because Pennant East permanently closed on September 11, 2011, the year for any such performance could not have been within the three years preceding the filing of the cancellation petition on March 7, 2018. In an attempt to establish that Pennant East closed on September 11, 2011, Petitioner submitted six newspaper articles and a blog post discussing its closure, but without supporting testimony or other evidence that we may consider for the truth of the matter asserted.[19] Respondent has objected to these articles as hearsay.

Although news articles may be used as evidence for what they show on their face, they may not be relied on for truth of the statements contained therein. Fed. R. Evid. 802; *Syngenta Crop Prot. Inc. v. Bio-Chek LLC,* 90 USPQ2d 1112, 1117 n.7 (TTAB 2009) ("A printed publication is only admissible for what it shows on its face; unless it falls within an exception to the hearsay rule it will not be considered to prove the truth of any matter stated in the publication.") (citing *7-Eleven Inc. v. Wechsler,* 83 USPQ2d 1715, 1717 n.2 (TTAB 2007)). Petitioner argues that the news articles and blog post fall within Fed. R. Evid. 807(a), the "residual hearsay" rule.[20] That rule provides an exception for statements that have "equivalent circumstantial guarantees of trustworthiness" analogous to those of a public record and are "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." *Id.* The residual hearsay exception is intended to "be used only rarely, in truly exceptional cases." *Pozen Inc. v. Par*

---

[19] 8 TTABVUE 20-42.

[20] By operation of Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), the Federal Rules of Evidence and Federal Rules of Civil Procedure apply to Board proceedings.

*Pharm. Inc.*, 696 F.3d 1151, 104 USPQ2d 1969, 1976 n.6 (Fed. Cir. 2012) (applying Fifth Circuit law and citing *United States v. Walker*, 410 F.3d 754, 757 (5th Cir. 2005)). Even assuming no reasonable effort could have discovered more probative evidence, the articles and blog post do not possess "circumstantial guarantees of trustworthiness" equivalent to official records or witness testimony. We therefore sustain Respondent's objection to the news and blog articles.[21]

Petitioner also relies on official records in an attempt to show that Pennant East closed in 2011. Petitioner's counsel declares that he "diligently searched [the Borough of Bellmawr, New Jersey's website and the Courier-Post's website][22] for references to liquor licenses held by the owner or owners of the Pennant East nightclub in Bellmawr, New Jersey…" and located minutes from three Council meetings "in which other licenses were renewed, but not the license for the Pennant East."[23] Counsel states: "I infer from this fact that the Pennant East license lapsed during these terms."[24] A review of the public records of the Borough of Bellmawr attached to counsel's declaration shows that the required liquor license granted to "Rt. 130 Entertainment, Inc. t/a Pennant East" was allowed to lapse twice from 2012 to June

---

[21] Even if these items were admitted, and considered for the truth of the matter asserted, their use is limited. The closing of a single venue such as Pennant East does not establish Respondent's non-use in other commercial venues or private venues.

[22] "The agenda and minutes from meetings of the Bellmawr Borough Council from 2011 to 2017 are available on the website. Legal notices pertaining to the Borough of Bellmawr are published in the *Courier-Post*." Murphy Decl., 8 TTABVUE 3.

[23] 8 TTABVUE 3. The three exhibits are Exhibit 14 [dated June 27, 2013], Exhibit 17 [dated July 23, 2015] and Exhibit 22 [dated June 22, 2017].

[24] *Id.*

30, 2015,[25] and that on October 1, 2015, notice was issued in the Courier-Post that an application was made to renew and transfer the license to Bellmawr Redevelopment Partners, LLC as an "unsited" license.[26] These records do not support Petitioner's contention that Pennant East closed. Even if Pennant East twice lost its liquor license, that alone does not establish that the premises were shuttered, did not move elsewhere, or did not continue operating as an alcohol-free establishment or in violation of the licensing laws. Furthermore, even if the evidence could suggest that Pennant East closed in 2011, it is at best inconclusive as to whether Respondent discontinued use of his mark from March 2015 to March 2018.

None of the other evidence from Respondent's initial disclosures assists Petitioner. The undated exhibits are irrelevant; they simply shed no light on whether Respondent used his mark at any time from March 2015 to March 2018. The statement, "that's the third time in the last four years [that Respondent worked for Mr. Dillon]" in the Dillon letter (Exhibit A, dated May 2018) is not established as true by witness testimony, but even if the statement were verified, no dates of performance are specified; all three purported performances could have taken place before March 2015, after March 2018, or during the relevant time frame.

We recognize that in attempting to prove a negative, as in proving abandonment through nonuse, "without resort to proper inferences the burdened party could be

---

[25] 8 TTABVUE 82.

[26] 8 TTABVUE 99. The notice was re-posted on October 8, 2015. *Id.* at 100. An "unsited" license has no operating place of business. *See* Alcoholic Beverage Control Handbook for Municipal Issuing Authorities, State of New Jersey, 8 TTABVUE 102-09.

faced with an insurmountable task." *Cerveceria Centroamericana,* 13 USPQ2d at 1310. But even in expedited proceedings, inferences must be based on proven foundational facts. Here, drawing all reasonable inferences available based on the evidence presented by Petitioner or contained in Respondent's initial disclosures, we find that Petitioner has failed to establish a prima facie case of Respondent's non-use.[27]

## C. Summary

Petitioner has not established a prima facie case of Respondent's abandonment of his service mark **MYST** based on its pleaded claim of nonuse during the three-year period immediately preceding the filing of the petition to cancel.

**Decision**: The petition to cancel is denied.

---

[27] Even if the parties stipulated to admit all of the evidence into the record, the result in this proceeding would not have changed, because were we to consider all the unverified and hearsay evidence submitted by both Petitioner and Respondent, we would still find that Petitioner had not proven Respondent's non-use of his mark between March 7, 2015 and March 7, 2018. Moreover, the May 8, 2018 article was published close enough in time to the date Petitioner filed the petition to cancel to support an inference that Respondent intended to resume use of his mark during the preceding three years. The Board may consider evidence regarding practices that occurred before or after the three-year period of nonuse to infer intent to resume use during the three-year period. *Crash Dummy Movie LLC v. Mattel Inc.*, 601 F.3d 1387, 94 USPQ2d 1315, 1317 (Fed. Cir. 2010). Such proof of an intent to resume use may have rebutted a prima facie case of abandonment.